Nirmal SINGH, Petitioner,

v.

John ASHCROFT, Attorney General of the United States, Respondent.

No. 03–1814.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 2004.

Decided March 22, 2004.

Shawn Kim, Kim & Wolfe, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Leslie McKay, Department of Justice, Washington, DC, for Respondent.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

### ORDER

Indian native Nirmal Singh applied for asylum, withholding of deportation, or relief under the Convention Against Torture. He alleged that if returned to India he would face persecution because he is a Sikh and a member of an organization that advocates for creating a separate state for Sikhs. His wife and child had a derivative claim but are no longer a part of the case. The Immigration Judge (IJ) denied his petition, and the Board of Immigration Appeals (BIA) summarily affirmed. Singh now petitions for review of the BIA's decision, which we deny.

### I.

In June 1996 Singh and his wife and child traveled on their own passports to the United States and entered on six-month visitor visas. After staying beyond the expiration of their visas, the Singh family received in September 1999 a Notice to Appear in a Seattle immigration court. Conceding removability, Singh motioned for a transfer of venue to Chicago, which was granted, and applied for asylum, withholding of deportation, or relief under the Convention Against Torture. Singh later had a hearing before an immigration judge in February 2000.

In Singh's asylum application, he stated that he was persecuted on account of being a Sikh and a member since January 1978 of the All–India Sikh Student Federation (AISSF), which promotes Sikhs' rights and the creation of an independent state, Khalistan, from India. Singh served as the general secretary of the organization for his area. Specifically, Singh described in his application being detained along with his two brothers and his father (all members of the AISSF) by the police in 1986 on false weapons charges and later tortured. Singh's application also included a description of an incident where a group of Hindus attacked and beat Singh and his two brothers. He also asserted without elaboration that he was a lawyer but could no longer pursue his career in India due to harassment.

At his hearing, Singh provided more details about the persecution he faced in India (although he did not mention the Hindu attack). Singh explained that he did pro bono legal work for AISSF, which consisted of filing bail applications on behalf of Sikhs jailed by the Indian police for assisting the AISSF, as well as bringing criminal cases (which can be filed as private complaints) against Indian police officers suspected of killing Sikhs in "false encounters." Singh submitted copies of several of these bail filings, which represent that the persons in question had been "falsely accused" but give no details of the cases.

Singh testified that due to his activities he was arrested by the police, along with his two brothers and father, in November 1986. According to Singh, the police tortured him for ten days, beating him with their hands, shoes, sticks, and "rolls." The police, he said, also pulled his beard and hair, both of which he wore long and uncut in conformance with a central tenet of the Sikh faith. The beatings injured his left arm and right abdomen. After his release Singh sought medical care, but he has since been unable to obtain medical records to corroborate the treatment. Singh did offer recent photographs of scars he attributed to these beatings. Singh also produced an undated letter from the president of the AISSF representing that Singh was a member, that he had provided pro bono legal services to Sikh youth, and that he had been detained and "tortured [ ] badly many times" by the police.

The IJ immediately questioned Singh at the hearing about his present nontraditional appearance of cropped hair, a clean shave, and no turban. Singh explained that for years after his 1986 detention he suffered continuous headaches that he attributed to the pulling of his hair and beard, so finally in 1993 he consulted a doctor, who recommended that Singh discontinue wearing the traditional Sikh turban and cut his hair and beard to alleviate the pain. Singh testified that he did not immediately follow this advice, but when the pain continued he finally cut his hair, shaved his beard, and stopped wearing the turban in 1996. Singh again was unable to submit at the asylum hearing any medical records to corroborate this explanation for his short hair and clean shave.

Singh testified that even after the 1986 incident he continued his legal efforts against the police. Almost every time he had a court appearance in one of these cases, the police would come to his house and then detain him for several hours. The police warned Singh to stop representing AISSF members. Singh reported the harassment once to the local court, but, since he had no evidence, the Indian magistrate dismissed his complaint.

According to Singh, the police detained Singh's brother, Jasbir Singh, for two months in 1992. From what we can discern from Singh's testimony, Jasbir was released but detained again in 1993 and beaten badly; he was released again but killed shortly thereafter under suspicious circumstances. Singh is adamant that the police killed his brother, a belief based entirely on his personal observation of the bruised and battered condition of Jasbir's body, which was found on the street, and Jasbir's history with the police. Singh testified that the police never provide death certificates or evidence when they have killed a civilian; hence, he could not submit such a document to the IJ.

Continuing his account of events, Singh said that he continued to suffer harassment after his brother was killed, so in 1993 he moved from Uttar Pradesh (a province next to the predominantly Sikh region of the Punjab) where all the described incidents had occurred, to New Delhi. Once in New Delhi, Singh stopped practicing law and went into hiding because the police allegedly continued to look for him. The police also raided his house in Uttar Pradesh and harassed his parents about his whereabouts. The police remained interested in him, Singh said, because he was a witness in several other abuse cases and still had complaints pending against officers on behalf of other Sikhs, although he conceded that by the time of the his asylum hearing these pending claims had probably been dismissed for failure to prosecute. Singh also believes that the police continued to seek him because of the evidence he had against them

(he did not identify what that evidence was) and because the police harbored enmity toward him.

Singh testified that in New Delhi he continued working for the AISSF by helping to produce a documentary about police abuse of Sikhs that was to be shown to Amnesty International and the United Nations. In January 1996 the police allegedly discovered that Singh was hiding at the AISSF compound and raided it, arresting many AISSF members and destroying or confiscating all video tapes and evidence intended for use in the documentary. Singh was away during the raid and did not return to the AISSF compound. Six months after the raid, Singh procured a visa and left with his family for the United States. Singh testified that he believes he will be killed if he returns to India. He also submitted an affidavit from his father and one from his friend, which state without elaboration that "his life is not safe here [in India]."

After the hearing in May 2002, the IJ denied relief. Expressing skepticism as to whether Singh was "in fact a Sikh and a member of AISSF" and explaining that Singh had failed to corroborate his claim of past persecution, the IJ first concluded that Singh had not established past persecution. The IJ's articulation of his skepticism about Singh's identity suggests that the IJ more accurately disbelieved that Singh was a *persecuted* Sikh. The IJ acknowledged that Singh "did admit evidence of his membership in the AISSF" and of the legal services he had provided. But the IJ focused on Singh's nontraditional appearance, citing a State Department report that warns of *Sikhs* and non-Sikhs posing as *persecuted* Sikhs and lists the failure to observe Sikh traditions as a warning sign. The IJ then emphasized that Singh had not corroborated his medical reason for his nontraditional appear-

ance with any evidence. The IJ also discussed Singh's failure to provide evidence to corroborate his testimony that the police had arrested and beaten him. In particular, the IJ cited the lack of medical evidence, the absence of corroboration for Singh's testimony that the scars depicted in his recent photographs are linked to the alleged torture, and the AISSF president's lack of personal knowledge in asserting in his letter that Singh had been tortured. The IJ also sought corroborating evidence that Singh's brother died at the hands of the police and additional evidence establishing that Singh had filed cases against the police.

The IJ next found lacking any well-founded fear of future persecution based on the IJ's perception that Singh had lived unharmed in New Delhi from 1993 to 1996. The IJ also expressed disbelief that the police would continue pursuing Singh after his complaints against them had been dropped. Apparently confusing Singh's failure to prove his own abuse claim before the Indian magistrate with his legal representation of other Sikhs and with his vagueness about the purported evidence the police sought to recover when they were searching for him in New Delhi, the IJ observed that Singh did not have "any evidence to implicate the police in the murders of Sikhs beyond that which the Indian magistrate had when it dismissed the cases." In addition, the IJ found that, based on a State Department country report, Singh could relocate safely within India, although the IJ did note that the police have the ability and authority to locate individuals who have moved to different areas of the country.

## II.

█ In this court Singh first argues that the BIA abused its discretion in summarily affirming the IJ's decision. But

since the summary affirmance means that we will evaluate the IJ's findings and reasoning as if they were the BIA's, *Mousa v. INS,* 223 F.3d 425, 428 (7th Cir.2000), the propriety of the BIA's action is irrelevant, *see Georgis v. Ashcroft,* 328 F.3d 962, 967 & n. 4 (7th Cir.2003).

■ Singh then presses three related arguments about the credibility of his testimony and the need for corroborating evidence: 1) the IJ erred in finding his testimony not credible and improperly demanded corroborating evidence; 2) the IJ would have found past persecution had he properly weighed Singh's testimony and documentary evidence; and 3) his own testimony that the police had tried to find him in New Delhi was enough to establish a well-founded fear of future persecution.

We will uphold the IJ's decision so long as it is supported by "reasonable, substantial, and probative" evidence in the administrative record as a whole. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Meghani v. INS,* 236 F.3d 843, 846 (7th Cir.2001). We will reverse only where the evidence is "'so compelling that no reasonable fact-finder could fail to find'" past or a well-founded belief of future persecution. *Georgis,* 328 F.3d at 967–68 (quoting *Elias–Zacarias,* 502 U.S. at 484).

To be eligible for asylum as a refugee, a petitioner is required to establish that he is an alien unwilling or unable to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Elias–Zacarias,* 502 U.S. at 481. The petitioner can make this showing by proving either that he 1) suffered past persecution on account of one of the enumerated categories, creating a rebuttable presumption

of future persecution, or 2) has a well-founded fear of future persecution on account of one of the enumerated categories. *Yadegar–Sargis v. INS,* 297 F.3d 596, 601–02 (7th Cir.2002); *Toptchev v. INS,* 295 F.3d 714, 720 (7th Cir.2002). Although not statutorily defined, persecution must cross the line from mere harassment to actions such as "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Yadegar–Sargis,* 297 F.3d at 602 (internal quotations and citations omitted).

If an IJ determines that an alien qualifies as a refugee, the Attorney General still retains discretion to grant or deny asylum. 8 U.S.C. § 1158(b)(1). The rule is different for withholding of deportation and for relief under the Convention Against Torture; if the criteria for either is established the Attorney General has no discretion to refuse asylum. The required showing for these, however, is more stringent than for asylum: a petitioner must show a "clear probability of persecution" for both withholding of deportation and for relief under the Convention Against Torture. *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *Tesfu v. Ashcroft,* 322 F.3d 477, 481 (7th Cir.2003); 8 C.F.R. § 208.16. But, if a petitioner cannot establish a well-founded fear of future persecution, he necessarily will have failed to prove a clear probability of persecution.

Singh first argues that the IJ misapplied the law by requiring that he further corroborate his testimony. Singh also contends that he could not reasonably obtain the evidence found lacking by the IJ, and that the IJ ignored his explanation for failing to submit it. In response the government argues that an IJ, who otherwise disbelieves the petitioner or is trying to decide whether to credit the petitioner's testimony, may expect the petitioner to

produce reasonably available, corroborating evidence, e.g., medical records.

A petitioner's testimony, if credible, may be sufficient to sustain his burden of proof without corroboration. 8 C.F.R. § 208.13(a); *see Pop v. INS,* 270 F.3d 527, 530 (7th Cir.2001). However, where the IJ " 'does not believe the applicant or does not know what to believe, the applicant's failure to corroborate his testimony can be fatal to his asylum application.' " *Chebchoub v. INS,* 257 F.3d 1038, 1042 (9th Cir.2001) (quoting *Sidhu v. INS,* 220 F.3d 1085, 1090 (9th Cir.2000)); *see Uwase v. Ashcroft,* 349 F.3d 1039, 1041 (7th Cir. 2003) ("[C]orroborating evidence is essential to bolster an otherwise unconvincing case."). When corroborating evidence would reasonably be available and accessible to the applicant, e.g., evidence verifying place of birth, medical records, or evidence of publicly held office, the applicant should provide it or explain why the information was not presented. *In re S–M–J,* 21 I. & N. Dec. 722, 725–26, 1997 WL 80984 (BIA 1997); *see Capric v. Ashcroft,* 355 F.3d 1075 (7th Cir.2004); *Malhi v. INS,* 336 F.3d 989, 993 (9th Cir.2003); *Diallo v. INS,* 232 F.3d 279, 290 (2d Cir. 2000). Conversely, if certain corroborating evidence is not reasonably available, it is not required. *In re S–M–J,* 21 I. & N. Dec. at 725.

Although the IJ was skeptical from the start of the hearing, in particular because of Singh's nontraditional appearance, we perceive no reason to conclude that the IJ misapplied the law. He doubted Singh's credibility and sought reasonably available medical evidence, the absence of which Singh never credibly explained. *See Chebchoub,* 257 F.3d at 1044; *Sidhu v. INS,* 220 F.3d 1085, 1091 n. 3 (9th Cir.2000); *In re S–M–J,* 21 I. & N. at 725. At the asylum hearing Singh did not explain why he could not obtain the medical evidence or

even assert that he had tried. Now in his brief Singh's counsel offers his own speculation that the doctor who treated Singh after his 1986 detention "may have since retired, relocated or destroyed the records given the time frame," but counsel never asserts that he or Singh ever tried to contact the doctor or have Singh's family contact him. Counsel implies that Singh indeed explained to the IJ his inability to produce medical records relating to his 1986 injuries and later headaches when he testified that he had to leave New Delhi in a hurry after the raid on the AISSF compound. But that testimony concerned Singh's purported inability to gather evidence from the AISSF compound about his membership and activities, and had nothing at all to do with trying to gather medical records. That aside, Singh's "quick departure" came fully six months after the police raid. The IJ also sought corroboration to support Singh's testimony that the police killed his brother. Contrary to Singh's interpretation of the IJ's decision, the IJ did not demand a death certificate, but instead wanted additional evidence of some sort. Considering that Singh was able to obtain an affidavit from his father, Singh could have supplied some further support, e.g., statements by his father, to corroborate his testimony that his brother died at the hands of the police.

Still, says Singh, even apart from the lack of additional corroboration, the IJ should have found him credible based on his knowledge of Sikh traditions, his traditional Sikh name, and all the rest of his testimony. Furthermore, according to Singh, the IJ inconsistently dismissed the corroborating evidence he did provide–his letter from the AISSF president verifying his membership–and then found him lacking in credibility because he failed, for example, to submit medical records to corroborate his explanation for his nontraditional Sikh appearance.

Since credibility determinations are questions of fact, we will overturn the IJ's assessment only in extraordinary circumstances. *Pop,* 270 F.3d at 530–31. But an IJ must support his credibility determination with "specific, cogent reasons that bear a legitimate nexus to the finding." *Id.* at 531 (internal quotations and citation omitted); *see Ahmad v. INS,* 163 F.3d 457, 461 (7th Cir.1999).

The IJ discredited Singh's testimony because he did not believe that Singh was a Sikh persecuted by the Indian police, and Singh failed to submit corroborating evidence or a credible explanation for the lack of evidence to convince the IJ otherwise. The IJ provided a specific, cogent reason for doubting Singh's testimony that he was a persecuted Sikh: the State Department had issued a publication warning of false claims of asylum from non-Sikhs or non-practicing Sikhs and emphasizing the failure to follow Sikh traditions as a possible sign, and the IJ simply did not believe Singh's uncorroborated testimony that in 1996–coincidentally the same year he entered the United States and ten years after the precipitating injuries–he cut his hair and shaved his beard to alleviate the headaches that continued to plague him from the police's pulling on his hair and beard. And Singh's recitation of several facts about Sikh beliefs does not establish that he is a persecuted Sikh. Singh's argument that the IJ's reason ignores the balance of his testimony and the letter from the AISSF president verifying Singh's membership goes nowhere; "a reviewing court should not supersede an administrative agency's findings simply because an alternative finding could also be supported by substantial evidence." *Krouchevski v. Ashcroft,* 344 F.3d 670, 673 (7th Cir.2003) (internal quotations and citation omitted). Hence, we may not overturn the IJ's credibility determination solely because Singh submitted evidence that might support the alternate finding that he was a persecuted Sikh.

Furthermore, Singh's evidence was too insubstantial to overcome the IJ's doubts that he was persecuted. *See Bhatt v. Reno,* 172 F.3d 978, 982 (7th Cir.1999) (finding testimony about threats and harm by Hindu radicals too vague, speculative, and insubstantial to establish persecution); *Krouchevski,* 344 F.3d at 674 (documents "could corroborate any number of stories; they do not prove that the one Krouchevski told is the truth"). State Department reports and newspaper articles did show that Sikhs suffered persecution at the hands of the Indian police in the Punjab during the 1980s and 1990s, but none of the submitted materials establish that Singh personally suffered persecution. Recent photos of scars on Singh's arm and abdomen do not connect the injuries to the alleged torture. And although the letter from the AISSF president does support Singh's testimony that he was a member of the organization who once provided legal services for Sikh youth, the author does not reveal a basis of knowledge for, or substantiate with any detail, his statement that Singh was tortured. Moreover, although Singh procured an affidavit from his father, who supposedly was detained along with Singh in 1986 and presumably witnessed the aftermath of the torture, the affidavit provides no details to corroborate Singh's testimony other than a vague sentence that Singh would not be safe if he returned. Finally, the bail applications that Singh submitted substantiate only that he filed bail applications for persons whom he had asserted in the applications had "falsely been involved in the said case by the police," but do not provide any details that would corroborate Singh's testimony that the police had detained him or were motivated to do so for his filing of these claims. Given the deferential stan-

dard of review for credibility determinations, we must uphold the IJ's adverse credibility finding. *See Pop,* 270 F.3d at 530–31.

With the adverse credibility finding intact, there is little left that would compel us to conclude that Singh has a well-founded fear of future persecution. Moreover, general background information shows that abuse of Sikhs by the police has ended, and, in fact, some officers who committed these crimes are now being prosecuted. Department of State, 2002 COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES: INDIA, (February 2001); Department of State, ADDENDUM TO THE INDIA COUNTRY PROFILE (June 1997). The most recent International Religious Freedom Report on India mentions only that Sikhs have been killed (by militant Muslims) in the Kashmir region, not in any other area. Department of State, 2003 INTERNATIONAL RELIGIOUS FREEDOM REPORT: INDIA, pp. 18–19, available at www.state.gov/g/drl/rls/irf/2003/24470.htm. Without credible evidence that he personally suffered abuse at the hands of the police or evidence that he may reasonably fear future persecution, Singh, like other Sikhs, could safely relocate to other parts of India. *See INS v. Ventura,* 537 U.S. 12, 18, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (applicants who can safely relocate do not qualify for asylum); *Malhi,* 336 F.3d at 993 (membership in the AISSF alone would not pose a nationwide danger); *Bhatt,* 172 F.3d at 982.

Accordingly, the petition for review is DENIED.