Arnaud TAWUO, Petitioner,

v.

Loretta E. LYNCH, Attorney General
of the United States,
Respondent.

No. 14–2937.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 2015.

Decided Aug. 20, 2015.

Matthew Scott Kriezelman, Attorney,
Kriezelman Burton & Associates, Chicago,
IL, for Petitioner.

Joseph A. O'Connell, Attorney, Oil, Attorney, Department of Justice, Washington, DC, for Respondent.

Before WOOD, Chief Judge,
HAMILTON, Circuit Judge, and
DARRAH, District Judge.[*]

WOOD, Chief Judge.

Arnaud Tawuo came to this country on a student visa in 2009 after what he describes as a hellish experience as a student activist in his home country of Cameroon. Within a year of his arrival, he filed an application for asylum and withholding of removal with U.S. Citizenship and Immigration Services (CIS). In support of the application, he included an affidavit detailing his treatment in Cameroon. It was not long before Tawuo was ordered to appear for removal proceedings. After retaining an attorney, Tawuo submitted a supplemental asylum application with another affidavit, this one longer and more detailed than the first. After hearings before the immigration judge (IJ) in 2011 at which Tawuo was the sole witness, the judge denied Tawuo's asylum application because he found Tawuo not to be credible. The Board of Immigration Appeals affirmed this decision in 2014. Given the high degree of deference we are required to give to the IJ's credibility determinations, we find no ground for upsetting the Board's decision. The judge's finding that Tawuo's testimony and affidavits were not credible was based upon a detailed analysis of the record. Substantial evidence supports the decision, and so we deny Tawuo's petition for review.

## I

Tawuo was born in Cameroon in 1986. He entered the United States through New York in December 2009; he had received a nonimmigrant student visa to attend Bluedata International Institute there. He got as far as registering at Bluedata, but he did not attend for long. Later Tawuo moved to Skokie, Illinois, and in August 2010 he applied for asylum and withholding of removal with the CIS office in Chicago. In his application, Tawuo said he was seeking asylum on the basis of his political opinions and membership in a particular social group in Cameroon, adding that he feared harm or mistreatment if he were to return. Tawuo's accompanying three-page affidavit described how he "was arrested, detained and tortured due to my activities with the Association for the Defense of the Rights of University Students in Cameroon (ADDEC)." CIS deemed Tawuo's application not credible, citing material inconsistencies between his affidavit and other evidence as well as "material implausibility."

A few months later, the Department of Homeland Security ordered Tawuo to appear for removal proceedings. In the order, the Department noted that Tawuo had not attended the Bluedata Institute since five days after his arrival in New York and had thus failed to comply with his visa in violation of 8 U.S.C. § 1227(a)(1)(C)(i). At a hearing before an IJ in November 2010, Tawuo through counsel conceded the charges listed in his notice to appear and said that he would be renewing his asylum application. The judge told Tawuo to submit "an affidavit stating the principal facts" of his case. The resulting ten-page filing was significantly more detailed than Tawuo's first affidavit, and it contained descriptions of his experiences as a student activist that his first submission had not mentioned. He claimed to have suffered multiple arrests, beatings, interroga-

[*] Hon. John W. Darrah of the Northern District of Illinois, sitting by designation.

tions, and periods of torture by police in Cameroon.

In 2011, the IJ held a hearing on Tawuo's renewed asylum application. Tawuo testified extensively about his life in Cameroon, his participation in ADDEC, and his subsequent persecution by police. The judge concluded that Tawuo was not credible and had not produced any other evidence sufficient to corroborate his account. With respect to Tawuo's credibility, the judge thought that Tawuo had exaggerated his role in ADDEC "and inserted his own narrative into well-publicized events in order to bolster a claim for relief." The judge also believed that Tawuo had misrepresented his claims of mistreatment. Overall, the IJ concluded that it was not possible to "be certain about nearly anything the respondent has said regarding his activism." The judge singled out four areas of Tawuo's case that were especially troubling: first, the omission of claims from his first asylum application that were included in his renewed application; second, discrepancies between Tawuo's testimony and the written record; third, plagiarism in Tawuo's second affidavit; and finally, Tawuo's misrepresentations about his visa application process. The judge also analyzed Tawuo's corroborating evidence before finding it to be deficient.

Tawuo appealed the IJ's decision to the Board of Immigration Appeals. The Board found no clear error in the judge's findings on Tawuo's credibility and corroborating evidence and dismissed his appeal. Tawuo timely filed a petition for review with this court; we have jurisdiction to consider his petition under 8 U.S.C. § 1252(a).

## II

This is a case in which the applicable standard of review is critical. An immigration judge's "credibility determinations are questions of fact and should only be overturned under extraordinary circumstances, although they must be supported by specific, cogent reasons that bear a legitimate nexus to the finding." *Rama v. Holder,* 607 F.3d 461, 465 (7th Cir.2010). (quotations and alterations omitted). We are required to "review the immigration judge and the Board under the deferential substantial evidence standard, meaning that we may only reverse their factual findings if the facts *compel* an opposite conclusion." *Tian v. Holder,* 745 F.3d 822, 828 (7th Cir.2014). For cases such as Tawuo's, which is governed by the REAL ID Act, the IJ's authority is even greater. The judge may base a credibility finding on the evidence as a whole, including the internal consistency of the applicant's statements. See 8 U.S.C. § 1158(b)(1)(B)(iii). We have noted that "[u]nder the Real ID Act, ... immigration judges can base an adverse credibility finding on any inconsistency, whether it goes to the heart of the applicant's claim or not." *Georgieva v. Holder,* 751 F.3d 514, 520 n. 2 (7th Cir.2014). That said, the inconsistencies spotted by the IJ should not be trivial. See *Hassan v. Holder,* 571 F.3d 631, 637 (7th Cir.2009). In Tawuo's case, the Board found no reason to reject the IJ's findings, nor do we. (We note that when the BIA, as it has done here, "agrees with the decision of the immigration judge, adopts that decision and supplements that decision with its own reasoning, ... we review the immigration judge's decision as supplemented by the Board." *Antia–Perea v. Holder,* 768 F.3d 647, 658 (7th Cir.2014) (quotations omitted).)

The IJ was particularly concerned about text in Tawuo's second affidavit that previously had appeared nearly verbatim in articles on the Internet site Wikinews. When the government's attorney called this to Tawuo's attention, Tawuo said that

he "personally wrote articles" about the events he described in his affidavit, and he speculated that "somebody might have used this information" in the Wikinews article. This bothered the IJ. He noted that the text in question concerned background issues in Tawuo's case, but it prompted him to question Tawuo's other personal observations. The judge refused to credit Tawuo's suggestion that Wikinews may have plagiarized *Tawuo's* own articles, because Tawuo proffered no evidence that he wrote any. Tawuo argues now that he "was not given an opportunity" to furnish copies of the articles. Not so; that is the purpose of a motion to reopen. The presence of possible plagiarism is a serious issue, and the IJ or Board would have been obliged to accept Tawuo's submission. Yet he and his attorney failed to use this opportunity to bolster his case. We are not saying that plagiarism in an application for asylum is an automatic indicator that the applicant is not credible. Nevertheless, it was reasonable for the IJ to consider Tawuo's apparent plagiarism in this case, along with his weak explanation for it, as evidence of his overall lack of credibility.

The IJ also cited changes Tawuo made to his story about his visa application process when he was confronted with contrary evidence. In his initial affidavit, Tawuo said he was "lucky" to receive a United States visa on his first attempt to apply. But he did not get a visa on his first try. Actually, the government rejected Tawuo's first visa application. When the government confronted Tawuo about this, he claimed that only his second visa attempt "counted" because only then did a "guidance counselor" explain the application process to him. This explanation did not impress the IJ, who called it a worrisome misrepresentation given Tawuo's unambiguous earlier statement about his good luck "at my first application." We cannot fault

this concern. When caught in what appeared to be a lie, Tawuo provided an unconvincing explanation. The IJ was well within his rights to regard this as evidence of a lack of credibility.

We are not as troubled as the IJ was by some of Tawuo's other supposed indiscretions, but in the end this does not matter. The judge identified several "material aspects" of Tawuo's claim that he discussed in his second affidavit but not his first. These aspects disturbed the judge because they made Tawuo's narrative "considerably more coherent" and increased the amount of mistreatment he supposedly received. Tawuo argues that he had no attorney when writing his first affidavit and as a result mistakenly thought he could simply summarize his experiences. The judge dismissed this explanation, reasoning that Tawuo, as a well-educated person aware that his stay in the United States was on the line, would have known he had to disclose everything the first time around. We see little basis for this leap of logic. Although he had learned English, Tawuo was an engineer, not a lawyer, and was relatively new to this country and the asylum process.

■ The IJ also found fault with two inconsistencies between Tawuo's first affidavit and his later affidavit and testimony. Tawuo changed his story about the length of a hospital stay he had in Cameroon. He also stated during his live testimony (and not before) that he remained active in ADDEC. These too do not seem like earthshaking problems. But our task is not to find reasons to disagree with the IJ. We will not overturn a credibility determination "simply because the evidence might support an alternate finding." *Xiao v. Mukasey,* 547 F.3d 712, 717 (7th Cir.2008). We need only assure ourselves that the IJ, and ultimately the Board, provided specific

reasons based in the evidence for their credibility determinations. They did so.

■ Tawuo also challenges a few other aspects of the judge's decision. We address these arguments briefly. He contends that the IJ did not let him provide documents that would have corroborated his account of his mistreatment in Cameroon. Yet Tawuo did submit what he believed were corroborating documents. His argument appears to be that, having considered these documents and found them wanting, the IJ should have given Tawuo one more chance to submit better evidence. We have· specifically rejected this argument. See *Abraham v. Holder*, 647 F.3d 626, 633–34 (7th Cir.2011); *Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir.2008). Tawuo also contends that the government had a duty to send his evidence "to a forensics laboratory" for authentication. This argument turns the burden of proof on its head. It was Tawuo's job to authenticate his own documents, not the government's. The judge's determination that he did not do so was not unreasonable. Finally, Tawuo argues that the judge should have considered his demeanor and candor. He complains that the judge's impressions in this regard must have faded between the initial hearing and the publication of the IJ's decision some fourteen months later. It is true that the asylum statute permits an immigration judge to consider an applicant's demeanor and candor in making a credibility determination, see 8 U.S.C. § 1158(b)(1)(B)(iii), but the statute does not require such consideration. No matter: the judge did consider Tawuo's candor and found Tawuo to be untruthful. As we have said, this conclusion was not unreasonable.

## III

Tawuo has not shown that the IJ's credibility determination was erroneous, nor has he met the high burden of showing that the IJ's finding that corroborating evidence did not cure this problem was incorrect. We conclude, to the contrary, that substantial evidence supported the IJ's and the Board's decisions, and we therefore DENY Tawuo's petition for review.