In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1831

TAO CHEN,

*Petitioner,*

*v.*

LORETTA E. LYNCH,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A099-890-056

ARGUED NOVEMBER 4, 2015 — DECIDED JANUARY 8, 2016

Before KANNE, ROVNER and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Tao Chen, a 39-year-old Chinese citizen, petitions for review of a decision by the Board of Immigration Appeals ("Board"), which upheld Immigration Judge ("IJ") Robert D. Vinikoor's denial of Chen's applica-

tion for asylum and withholding of removal.[1] The IJ ruled Chen's testimony insufficiently credible and corroborated, and he alternatively found Chen did not demonstrate a well-founded fear of persecution on account of a political opinion. We deny Chen's petition for review on all grounds.[2]

## I. BACKGROUND

### A. Factual Background

We recount the underlying facts principally from Chen's testimony during his final removal hearing. Chen was born in Shenyang, China, in 1976. In 2004, Chen married Junhui Feng, and together they had a daughter, Feng Jia Qi, that same year. Chen was a farmer and owned farmland in the countryside of Shenyang.

On August 8, 2005, the Chinese government appropriated land from Chen's village, including Chen's farmland, to

[1] The Board also upheld the IJ's denial of Chen's application for protection under the Convention Against Torture ("CAT"). However, Chen did not challenge the CAT ruling in his opening brief and thus waives his ability to challenge that ruling. *Haichun Liu v. Holder*, 692 F.3d 848, 851 (7th Cir. 2012) ("Because [petitioner] did not discuss the Convention Against Torture claim in his opening brief, he has waived it …")

[2] We are troubled that Chen's counsel failed to mention in his brief *Weiping Chen v. Holder*, 744 F.3d 527 (7th Cir. 2014), which constitutes "legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client." Ill. R. Prof'l Conduct 3.3. Chen's counsel represented the petitioner in *Weiping Chen* and thus knew of this legal authority. With this omission, Chen's counsel came perilously close to violating his duty of candor towards this tribunal in the present case. *Id.* Therefore, Chen's counsel should take care to disclose and address relevant legal authority, both favorable and unfavorable, in the future.

build an industrial park. Chen was allowed to keep his house, and he received compensation for his land. Chen believed, however, that he should have received twice the amount in compensation. Approximately 300 other farmers in Chen's village had their land similarly appropriated without proper compensation.

Several weeks later, on August 29, 2005, Chen, his wife, and 100 other farmers traveled to the Yuhong district government building to protest the land appropriation and improper compensation. The farmers protested for two hours, displaying signs and shouting demands. Then the police arrived. After issuing a warning, the police used a water cannon to disperse the protestors. Chen and twenty other farmers continued to protest, and the police arrested and held them at Yuhong district police station.

Chen was held at the police station for four days. On the first day, Chen was interrogated by three police officers. The police officers told Chen that his protest was a crime, threatened him with life imprisonment, and demanded that Chen sign a document transferring his land to the government. Chen refused. The police officers then covered him with a cotton quilt and beat him more than twenty times with a baton. After the beating, Chen was forced to stand for two hours in the courtyard before being taken to a detention cell. The police ordered the other inmates to watch Chen, and at mealtimes, they would take his food. Throughout his time in custody, the police repeatedly interrogated, threatened, and beat Chen in this manner. Chen, however, continued to refuse to sign the land-transfer agreement.

Meanwhile, the police confronted Chen's wife at their home. The police told her that Chen was in jail with danger-

ous criminals and that he would be released if she signed the land-transfer agreement. Scared, she signed and paid a release fee. The police then showed Chen the land-transfer agreement signed by his wife, and at this point, he also signed.

After his detainment, Chen could not lift his arm because of the beatings, and to this day, he still suffers from occasional pain. Chen was also required to periodically report to the local police. Chen reported twice before deciding that he could not continue to live under this type of police surveillance.

In November 2005, Chen obtained a visa at the United States Consulate in Shenyang. He told the American official that he was a sales manager who wanted to learn about American production technology. Chen had already obtained a passport on May 19, 2005, just prior to the land dispute with the government. Chen was admitted to the United States as a visitor on November 26, 2005, with authorization to remain until February 26, 2006. Chen's wife remained in China, and she told Chen that he had been threatened with incarceration and sterilization if he ever returned.

*B. Procedural Background*

Chen stayed in the United States beyond his authorization date. On September 8, 2006, he filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He was referred to the immigration court in Los Angeles. On December 27, 2006, the Department of Homeland Security ("DHS") commenced removal proceedings against Chen by filing a Notice to Appear in Immigration Court. DHS charged him with remova-

bility under 8 U.S.C. § 1227(a)(1)(B), as an alien who had remained in the United States longer than permitted. Represented by counsel, Chen appeared before an IJ, who found that alienage and removability had been established through Chen's admissions. Subsequently, Chen renewed his applications for asylum, withholding of removal, and protection under CAT.

On August 9, 2012, the IJ held a final hearing on the merits of Chen's application. Chen was the only witness who testified. He also submitted into evidence his passport and letters written by his wife and mother.

The IJ denied all relief on November 13, 2012. The IJ began by analyzing the credibility of Chen's testimony.

The IJ determined Chen's testimony to be credible but not detailed or persuasive enough without corroboration to meet his burden of proof. The IJ characterized Chen's testimony as "for the most part internally consistent and consistent with his written statement" but noted "some problems with his testimony," including the lack of post-detention protest over the appropriation of his farmland, as well as inconsistent testimony regarding post-confinement police surveillance, the ongoing police search in China for him, and the threat of government sterilization.

The IJ then found that Chen did not provide, or adequately explain the absence of, reasonably available evidence to corroborate his testimony. The letters and passport that he submitted did not support critical elements of his testimony, including the inadequate compensation for his land, the injuries sustained in police custody, and the police surveillance that motivated him to flee China. The IJ stated that

Chen provided no medical records or letters from any of the individuals who also lost their land, participated in the protest, or were arrested with him. Consequently, because Chen's testimony and corroborating evidence were insufficient to carry his burden of proof, the IJ denied Chen's applications for asylum, withholding of removal, and protection under CAT.

Alternatively, the IJ ruled that even if Chen had submitted sufficient evidence to corroborate his testimony, he still did not demonstrate eligibility for asylum because he did not meet the statutory definition of a "refugee." 8 U.S.C. § 1101(a)(42)(A).

First, the IJ found that Chen did not demonstrate that he suffered harm rising to the level of past persecution. Chen's claim of inadequate government compensation for his farmland was "not sufficiently severe to be considered persecution." The IJ also rejected Chen's claim of mistreatment in detention because he "offered no further details" regarding his beatings or injuries. And the IJ concluded that Chen's claim of police surveillance in the form of periodic questioning "does not constitute persecution."

Second, Chen failed to demonstrate that any harm he suffered was on account of the protected ground of a political opinion. The IJ characterized Chen's dispute over inadequate compensation as "an economic demand," as opposed to an expression of political opinion. Additionally, the IJ found that the police detained Chen because he refused to disperse, not because he expressed a political opinion.

Third, the IJ found that Chen failed to establish a "well-founded fear of persecution" should he return to China be-

cause his testimony relating to negative police actions towards him and his wife—including surveillance, harassment, imprisonment, and sterilization—was inconsistent and uncorroborated.

Having determined that Chen did not meet his burden to show eligibility for asylum, the IJ rejected Chen's remaining claims for withholding of removal and protection under CAT because they required a higher burden of proof. The IJ ordered Chen removed to China.

On March 25, 2015, the Board affirmed the IJ's decision in all material respects, holding that the IJ's findings of fact were not "clearly erroneous." This appeal follows.

## II. ANALYSIS

When the Board agrees with the decision of the IJ, adopts that decision, and supplements that decision with its own reasoning, we review the IJ's decision as supplemented by the Board. *Tawuo v. Lynch*, 799 F.3d 725, 727 (7th Cir. 2015). We review questions of law *de novo*. *Id.* We review findings of fact and credibility determinations, which are questions of fact, under a deferential "substantial evidence" standard, meaning we may "only reverse [the IJ and Board's] factual findings if the facts *compel* an opposite conclusion" *Id.* (emphasis in original). In other words, the IJ's findings of fact are conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

On appeal, Chen challenges the denial of his applications for asylum and withholding of removal. All of Chen's arguments relate to the IJ Robert D. Vinikoor's findings of fact

and are reviewed under a deferential "substantial evidence" standard.

*A. Asylum*

The Attorney General "may grant asylum to an alien" who is a refugee. 8 U.S.C. § 1158(b)(1)(A). A "refugee" is defined as a person who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

We begin our review with the IJ's credibility and corroboration analysis, which applies to both Chen's asylum and withholding of removal claims. Then, we address the IJ's alternative finding of ineligibility for asylum relief.

*1. Credibility and Corroboration*

An applicant bears the burden of proving that he is a "refugee" and eligible for asylum. 8 U.S.C. § 1158(b)(1)(B)(i); *see also* 8 C.F.R. § 1208.13(a). The testimony of the applicant "may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii); *see also* 8 C.F.R. § 1208.13(a).

In determining whether the applicant has met his burden, the IJ "may weigh the credible testimony along with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii). An IJ's credibility determination considers the "totality of circumstances, and all relevant factors" and may be based on a myriad of factors, including the inherent plausibility and in-

ternal consistency of the applicant's statements. *Id.* § 1158(b)(1)(B)(iii). Where the IJ determines that the applicant should provide evidence that corroborates otherwise credible testimony, "such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* § 1158(b)(1)(B)(ii).

Chen challenges the IJ's findings with regard to his testimony, specifically arguing that the IJ erred in finding that Chen did not provide, or adequately explain the absence of, reasonably available evidence to corroborate his testimony.[3]

First, Chen argues that he could not reasonably provide corroboration for his testimony from the other protestors because of his rapid flight from China after his detention and his wife's relocation from their home.

Chen's argument is similar to those rejected by this court in *Weiping Chen v. Holder*, 744 F.3d 527 (7th Cir. 2014).[4] In *Weiping Chen*, the court reviewed an IJ finding that required

---

[3] Chen does not dispute the IJ's credibility ruling, which determined that his testimony required corroboration. Therefore, this argument is waived. *See Long-Gang Lin v. Holder*, 630 F.3d 536, 543 (7th Cir. 2010). ("[Petitioner] has not made any cogent argument to challenge these reasons for the adverse credibility finding. Thus, he has waived any challenge to them.")

[4] Although the burdens of proof differ between asylum and withholding of removal, the credibility and corroboration analysis is the same in examining the underlying claim of potential persecution on account of a protected ground. 8 U.S.C. § 1231(b)(3)(C) (referring to 8 U.S.C. § 1158(b)(1)(B)); *see I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 423–24 (1987). Therefore, *Weiping Chen*'s corroboration analysis, which pertains specifically to a claim of withholding of removal, is relevant to the present corroboration analysis, which relates to Chen's claims of asylum and withholding of removal.

corroborating evidence for a Chinese alien who had provided inconsistent testimony regarding a property dispute with the government, participation in a protest, and detainment and abuse by the police. The *Weiping Chen* court upheld the IJ's finding, noting that the lack of required corroborating evidence—specifically from his wife, with whom he had contacted two months before his hearing, and the other merchant-protestor, with whom he claimed to have lost contact—"dooms" the applicant's arguments. *Id.* at 533.

In the instant case, Chen has likewise maintained contact with his wife who allegedly lives at their home. In fact, Chen's inconsistent testimony regarding his wife's location— he initially stated that she had left home to escape police harassment but then admitted that she currently lived at home—was a reason the IJ required corroboration. At his final hearing, Chen submitted a letter from his wife, which provided limited corroboration to his story in that it indicated that he protested, that he was arrested, and that she paid a fine to obtain his release. But neither his wife's nor his mother's letter mentioned that he was beaten by the police, that he sustained injuries, or that he fled China because of the ongoing police surveillance. Moreover, because Chen was able to contact his wife who lives at home in their village and obtain a letter from her, it is reasonable to assume that he could have also contacted the other protestors who live in the same village as his wife and obtain evidence from them. Thus, Chen fails to adequately explain his lack of corroborating evidence.

Second, Chen argues that it is reasonable that he did not provide any medical evidence corroborating the physical injuries he sustained while in police custody. He asserts that

the medical records were unavailable because the original copies were lost during his flight from China and his wife's relocation and new copies of the records are unobtainable due to deficient recordkeeping in rural China.

Chen's argument is without merit. We initially note that the IJ specifically highlighted Chen's detention injuries as a critical part of his testimony requiring corroboration: "There is no medical evidence either from doctors in China or the United States corroborating his injury." Although Chen argues that his Chinese medical records are unavailable, he provides no support for this assertion, such as a statement from his wife or Chinese doctors. In other words, Chen "did not explain why he could not obtain the medical evidence or even assert that he had tried." *Singh v. Ashcroft*, 93 F. App'x 929, 934 (7th Cir. 2004). Furthermore, even accepting Chen's statement that his Chinese medical records are unavailable, the lack of corroborating medical evidence from American doctors is fatal to his claim. Chen does not provide, nor does he explain the absence of, corroborating medical evidence from this reasonably available source.

Third, Chen attempts to rely on *Dawoud v. Gonzales*, 424 F.3d 608 (7th Cir. 2005), for the proposition: "To expect [asylum applicants] to stop and collect dossiers of paperwork before fleeing is both unrealistic and strikingly insensitive to the harrowing conditions they face." *Id.* at 613.

Chen's reliance on *Dawoud* is misplaced because the credibility determination in *Dawoud* is different from the finding in Chen's case. *Dawoud* explicitly concerned the "rule permitting reliance solely on credible testimony," which is meant for asylum applicants who "flee their home countries under circumstances of great urgency … literally running for their

lives … [and] abandon[ing] their families, friends, jobs, and material possessions without a word of explanation." *Id.* at 612–13. In contrast, here, the IJ explicitly found that sole reliance on Chen's testimony was not appropriate and required corroboration. In addition, unlike those who "flee … circumstances of great urgency," Chen traveled to the United States on a valid visitor visa obtained two months after his detention and protest. *Id.*

In sum, the IJ's credibility and corroboration findings were supported by "substantial evidence" and the record does not compel the conclusion that Chen could not have reasonably obtained corroborating evidence. Consequently, his failure to produce such evidence when required is fatal to his asylum claim.

### 2. *Eligibility for Asylum Relief*

Chen also challenges the IJ's alternative finding that, even if his testimony was accepted as true, he is not eligible for asylum relief because he has not shown past persecution or a well-founded fear of future persecution on account of a political opinion.

As previously stated, the Attorney General may grant asylum to aliens who fall under the statutory definition of a "refugee." 8 U.S.C. § 1158(b)(1)(A); 8 U.S.C. § 1101(a)(42)(A). An applicant can establish asylum eligibility as a refugee in one of two ways: (1) "past persecution" or (2) "a well-founded fear of future persecution." 8 C.F.R. § 1208.13(b).

To establish "past persecution," an applicant must show that "he or she has suffered persecution in the past" on account of a protected ground, such as political opinion. 8 C.F.R. § 1208.13(b)(1). If "past persecution" is established, it

creates a rebuttable presumption of a "well-founded fear of persecution." *Id.*

To establish a "well-founded fear of future persecution" regardless of past persecution, an applicant must show: (a) a fear of persecution in his or her country on account of a protected ground, (b) there is a "reasonable possibility of suffering such persecution if he or she were to return to that country," and (c) he or she is "unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear." 8 C.F.R. § 1208.13(b)(2).

*a.  Past Persecution*

Chen contends that he has established "past persecution" on account of a political opinion through his protest against the Chinese government's appropriation of his land and his subsequent treatment by the police.

Chen's contention fails because his case is controlled by *Weiping Chen*. Like in *Weiping Chen*, Chen has not demonstrated past persecution on account of a political opinion, a protected ground, because he has not shown expression of a political opinion.[5]

In *Weiping Chen*, based on nearly identical facts, this court upheld the IJ's finding that an asylum applicant did not ex-

---

[5] Although the burdens of proof differ between asylum and withholding of removal, the protected ground analysis is the same in examining the underlying claim of potential persecution on account of a protected ground. 8 U.S.C. § 1231(b)(3)(A); 8 U.S.C. § 1158(b)(1)(A); 8 U.S.C. § 1101(a)(42)(A); *see Cardoza-Fonseca*, 480 U.S. at 423–24. Therefore, *Weiping Chen*'s protected ground analysis, which pertains specifically to a claim of withholding of removal, is relevant to the present protected ground analysis, which relates to Chen's claims of asylum and withholding of removal.

press a political opinion. 744 F.3d at 533–34. Weiping Chen was a Chinese storeowner, and in April 2004, the Chinese government developed the area containing Weiping Chen's store, destroying it and other buildings. In response, Weiping Chen and one hundred other merchants and family members protested against the local government office and demanded "proper compensation." *Id.* at 530. The local police responded by dispersing the crowd with a water cannon. When Weiping Chen and other protestors refused to leave, the police arrested them. Subsequently, Weiping Chen was detained for three days, beaten, and forced to sign an agreement stating that he "would not approach the government asking for compensation." *Id.* Weiping Chen was then released and required to report to the police station periodically. Several months later, he entered the United States on a non-immigrant visitor visa and stayed beyond his authorization date. Meanwhile, his wife remained in China and reported that the police were looking for him.

In *Weiping Chen*, this court upheld the IJ's finding that Weiping Chen had not suffered past persecution or had a well-founded fear of future persecution on account of a political opinion. The court described Weiping Chen's protest as "non-political" noting that he "was unable to articulate any political opinion, and he admitted that he did not belong to any political organizations, and that other than this protest, he participated in no other political activities." *Id.* at 534. Moreover, the court upheld the IJ's finding that Weiping Chen's circumstances "should be characterized as a personal property dispute rather than an expression of political opinion" and held that a "personal property dispute, no matter how nasty, cannot support an alien's claim of asylum." *Id.* (internal citations and quotation marks omitted).

Chen's case is indistinguishable from *Weiping Chen*. In the present case, Chen claimed that his property was appropriated by the government without fair compensation. He participated in a protest with other landowners. Chen was allegedly arrested, detained, beaten, and forced to sign an agreement to end the dispute. Furthermore, like *Weiping Chen*, there is no record evidence indicating that Chen articulated any political opinion, belonged to any political organizations, or participated in any political activities. Because Chen's case is indistinguishable from *Weiping Chen*, we similarly uphold the IJ's finding that Chen has not shown past persecution on account of a political opinion.

Chen asked, at oral argument, for this court to overrule *Weiping Chen*. Chen argues that because the Chinese government controls everything in China and excludes its citizens from the decision and political process, every confrontation between the Chinese government and Chinese citizens "assumes a political significance."

We decline to overrule *Weiping Chen*. Chen offers no support for his characterization of the Chinese political climate, nor does he provide adequate justification for such a broad interpretation of "on account of a political opinion" in China, a view that would greatly enlarge the scope of asylum eligibility for applicants from that country. Thus, *Weiping Chen* stands.

### b.  *Well-Founded Fear of Future Persecution*

Chen additionally contends that he has demonstrated a "well-founded fear of future persecution" on account of a political opinion through the following: (1) his post-

detainment police surveillance and travel restrictions and (2) continued police inquiries into his location.

To establish a well-founded fear of future persecution, an asylum applicant "must satisfy both the objective and subjective prongs of the well-founded fear standard." *Ayele v. Holder*, 564 F.3d 862, 868 (7th Cir. 2009). The subjective component "often depends upon the applicant's own credibility and testimony." *Id.* In contrast, the objective prong requires evidence that there is a "reasonable probability" that the applicant "will be singled out individually for persecution" or that "there is a pattern or practice of persecution of an identifiable group" to which the applicant belongs. *Id.* (internal quotation marks omitted).

Chen first argues because he suffered past persecution in the form of post-detainment police surveillance and travel restrictions and is therefore entitled to a presumption of a well-founded fear of future persecution.

Assuming that Chen could overcome *Weiping Chen* and establish expression of a political opinion, this argument still fails because of his inconsistent testimony and lack of corroborating evidence. Chen initially testified that he left China because he could not live under police surveillance but then conceded he only had to report to police twice and did not allude to any mistreatment during those times. Regarding police surveillance, Chen did not provide the required corroborating evidence to support this assertion. In terms of reporting to the police, we have held that periodic questioning by police does not constitute persecution. *E.g.*, *Mekhtiev v. Holder*, 559 F.3d 725, 730 (7th Cir. 2009). Accordingly, Chen is not entitled to a rebuttable presumption of a well-founded fear of future persecution.

Chen also argues that he has established a well-founded fear of future persecution because of continued police inquiries into his location.

Chen's argument is meritless because he has not demonstrated an objectively reasonable fear. His argument is undercut by his inconsistent testimony and lack of corroborating evidence. On one hand, Chen had testified that he fears the police will be "enraged" at him and incarcerate him because he was supposed to remain under surveillance. On the other hand, he gave conflicting testimony about whether the police were even still looking for him. Additionally, Chen initially stated that his wife had fled their home to avoid police harassment but then admitted that his wife lived at home and had informed him that the police were still looking for him. Moreover, Chen provides no corroborating evidence to support any of these assertions. In other words, Chen has not shown a "reasonable possibility" that he will be persecuted if returned to China. *Ayele*, 564 F.3d at 868.

We thus hold that the IJ's alternative finding that Chen was ineligible for asylum relief was supported by substantial evidence, and the record does not compel a conclusion otherwise.

### B. *Withholding of Removal*

To qualify for withholding of removal, an applicant must "demonstrate[s] a clear probability of persecution on account of a protected ground, in this case, political opinion." *E.g.*, *Weiping Chen*, 744 F.3d at 532 (alteration in original); *see also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); 8 U.S.C. § 1231(b)(3)(A). This burden of proof is higher than that required for asylum. *Cardoza-Fonseca*, 480 U.S. at 427–49.

Because Chen has not carried his burden for asylum relief, he cannot meet the higher burden of proof required for withholding of removal. *Toure v. Holder*, 624 F.3d 422, 428 (7th Cir. 2010).

### III. CONCLUSION

For the foregoing reasons, Chen's petition for review is DENIED.