NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 9, 2019
Decided July 17, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1101

| | |
|---|---|
| YANBO LIU, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A087-867-164 |
| | |
| WILLIAM P. BARR, | |
| Attorney General of the United States, | |
| *Respondent*. | |

### O R D E R

Yanbo Liu, a 47-year old Christian man from China, seeks asylum and withholding of removal based on his fear that he will face religious persecution if he returns to China. An immigration judge determined that Liu was not credible and denied him relief. The Board of Immigration Appeals affirmed that decision and dismissed Liu's appeal. Because substantial evidence, supports the IJ's adverse credibility finding, we deny Liu's petition for review.

Nearly two decades ago, Liu left China to work in South Korea, where he took a job in a manufacturing plant and, with a colleague named Yong Zhang, began attending a Catholic church. Liu gave inconsistent timelines for these events: he testified before an

IJ that he went to South Korea in 2000 and started going to church in 2004, but he wrote in his asylum application that he went to South Korea in 2003 and was introduced to Christianity in 2006. Upon returning to China in 2007, he studied Christianity at weekly home gatherings with classmates.

Police burst in on one gathering, seized the group's bibles, and beat and arrested Liu and his classmates. Liu again inconsistently recalled when that occurred: he testified that he was arrested, alternatively, in 2008, July 2009, and October 2007; in his application, he wrote that the arrest occurred in February 2009. When the IJ asked about the inconsistent dates, Liu clarified that he began attending weekly gatherings in October 2007. Yet another discrepancy regarding the arrest surfaced: Liu testified at the hearing that police arrested 14 people, though he wrote 16 in his application.

Liu testified that police locked him up at the police station, where, for three days, officers interrogated him and periodically kicked and beat him. Liu said first that the police "didn't ask much," and he later added that they asked him why the group gathered. In his application for asylum, though, Liu asserted that police questioned him about the dates when he began attending gatherings, the identity of the group's leaders, the number of participants, and whether the group had international ties. When the IJ asked him to explain the discrepancies in his accounts, Liu said that the events transpired "too long ago" and "most likely" took place as he described them in his application. Liu testified that police fined and released him but called him to report to the police station three to four Sundays per month.

At the hearing, Liu also recounted a conversation with his wife, who told him that police looked for him at his house in China "several days ago." But when government counsel asked him on cross-examination whether anyone had searched for him, Liu replied that no one had in three years.

Liu left China in 2009, and he arrived in in Chicago where he resumed going to church. He testified initially that he attended the church "[i]n Chinatown, under the Arch." He then clarified that he was thinking of another organization and that he attended "Chinese Christian church," though he did not pay a membership fee. Government counsel asked Liu if he knew other people who attended the church, and he testified that he knows of one unnamed "colleague." Liu works Sundays, so he has not been to church in a few years.

Liu overstayed his six-month tourist visa and applied for asylum and withholding of removal based on anticipated religious persecution if he returns to

China. He also applied for relief under the Convention against Torture, but that application was denied, and he says nothing about that relief in this petition, so we do not discuss the matter further. He supplemented his application with letters from his wife and from two of his classmates in China. His wife wrote about Liu's arrest, time in custody, and decision to leave China, while his classmates each wrote a few sentences about the arrest.

The IJ concluded that Liu was not credible and denied his petition. She identified inconsistencies in Liu's timeline, including the dates when he said that he arrived in South Korea and converted to Christianity. She also highlighted discrepancies in Liu's accounts of his interactions with police, including the dates of his arrest, the number of people arrested, the nature of the police interrogation, and the date when police last looked for him. The IJ then characterized Liu's testimony about his practice of Christianity as "vague and incomplete." She added that Liu's corroborating evidence was insufficient to meet his burden of proof under the REAL ID Act; the corroboration lacked detail about his religious practice, and Liu did not include other, likely available corroborating evidence, such as a letter from his former coworker Zhang. The IJ wrote that she "[was] left unsure of certain material facts and, therefore, believes [Liu's] claim might be fabricated."

The Board of Immigration Appeals adopted and affirmed the IJ's decision. The Board agreed with the IJ that Liu's corroboration "did not rehabilitate his credibility nor did it independently establish" his claims for asylum or withholding of removal.

Liu focuses his petition on the IJ's adverse credibility finding. The credibility assessment is critical because credible, specific, and persuasive testimony can establish a petitioner's claim, whereas an adverse credibility finding will doom it. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *Alvarenga-Flores v. Sessions*, 901 F.3d 922, 925 (7th Cir. 2018); *Tao Chen v. Lynch*, 810 F.3d 466, 472 (7th Cir. 2016). Liu asserts that the IJ "placed outsized importance on an applicant's uncertainty about dates and times, the sorts of minor details that are most vulnerable to the vagaries of human memory." *Cojocari v. Sessions*, 863 F.3d 616, 622 (7th Cir. 2017). Any inconsistencies in his account's details, he says, have "little bearing on the reliability of his broader narrative." *Id.* at 623.

Petitioners who challenge adverse credibility findings face a steep evidentiary burden. We will overturn a credibility determination only under extraordinary circumstances in which the IJ and Board did not support their conclusions with specific evidence and the facts compel the opposite conclusion. *See Tao Chen*, 810 F.3d at 471; *Tawuo v. Lynch*, 799 F.3d 725, 727 (7th Cir. 2015). When making a credibility assessment,

an IJ may consider the consistency, detail, and plausibility of the petitioner's testimony, regardless of whether the given testimony goes to the heart of the petitioner's claim. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Alvarenga-Flores*, 901 F.3d at 925–26.

The IJ's adverse credibility finding is amply justified by significant inconsistencies within Liu's testimony and written submissions. Liu's testimony included multiyear discrepancies for the events in his account of religious persecution, including when he went to South Korea (2000 versus 2003), when he was introduced to Christianity (2004 versus 2006), when he was arrested (dates ranging from 2007 to 2009), and when police last looked for him at his house in China (several days versus three years ago). Such wide variations in dates of key events on a petitioner's timeline may support an adverse credibility finding. *See, e.g.*, *Santashbekov v. Lynch*, 834 F.3d 836, 840 (7th Cir. 2016) (four-month difference in date petitioner began using new name and one-year difference in date petitioner joined political party); *Krishnapillai v. Holder*, 563 F.3d 606, 617–18 (7th Cir. 2009) (three-month difference in date petitioner was arrested and two-month difference in date petitioner left country). Moreover, Liu's testimony and written statement did not match regarding the number of classmates arrested (14 versus 16) or the extent of questioning from police ("not much" versus many specific questions). And when describing his religious practice in Chicago, Liu confused the name of the church that he attended and said that he knew of only one unnamed "colleague" who also went there. Several of these factual contradictions in Liu's testimony go to the heart of his claim for asylum, and they cannot be dismissed as "trivial or benign," as might cause a reviewing court to set aside an adverse credibility finding, as in *Cojocari v. Sessions*, 863 F.3d 616, 622–23 (7th Cir. 2017), and cases cited therein.

Liu next attacks the IJ's conclusion that his corroborating evidence did not rehabilitate his credibility. Liu argues that the IJ wrongfully discounted the corroborating evidence for not including information when the record does not show that the information was known and the letters were coming from people "within the grasp of the Chinese police." Finally, Liu asserts that the IJ wrongly faulted him for not including a letter from Zhang, who introduced him to Christianity in South Korea.

Liu's assertions miss the mark for three reasons. First, Liu bears the burden of submitting corroborating evidence, and he did not show that his wife and classmates lacked the knowledge and security to corroborate his testimony. *See* 8 U.S.C. § 1158(b)(2)(B)(ii); *Alvarenga-Flores*, 901 F.3d at 925. Second, partially corroborative letters are not enough to overturn an IJ's adverse credibility determination,

*see Santashbekov*, 834 F.3d at 840; *Tao Chen*, 810 F.3d at 473, and the letters do not substantiate key parts of Liu's story, including his travel to South Korea, his conversion to Christianity, his weekly gatherings in China, or his church attendance in Chicago. Third, though we might accept Liu's assertion that he could not have obtained a letter from Zhang because the two maintained "very little communication," *see Huang v. Gonzales*, 403 F.3d 945, 951 (7th Cir. 2005), the IJ's decision was still reasoned and supported with substantial evidence, *see Santashbekov*, 834 F.3d at 841.

Because Liu's burden for obtaining asylum is less than it is for withholding of removal, his petition for withholding of removal necessarily fails, too. *Alvarenga-Flores*, 901 F.3d at 926; *Santashbekov*, 834 F.3d at 839 n.1.

Thus, we DENY the petition for review.