In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 16-2189

YUMIN XIANG,

*Petitioner*,

*v.*

LORETTA E. LYNCH, Attorney General
of the United States,

*Respondent*.

_____

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A201-011-597

_____

ARGUED DECEMBER 7, 2016 — DECIDED JANUARY 3, 2017

_____

Before BAUER and FLAUM, *Circuit Judges*, and SHADID, *Chief District Judge*.[*]

SHADID, *Chief District Judge*. Yumin Xiang is a 46-year-old female citizen of the People's Republic of China petitioning for review of an order upholding the denial of her application

_____

[*] Of the Central District of Illinois, sitting by designation.

for asylum and withholding of removal.[1] Her request for asylum was denied both initially by the Immigration Judge ("IJ") and on appeal to the Board of Immigration Appeals ("BIA") based on the IJ's finding that Xiang's written request and oral testimony contained inconsistencies. Xiang now seeks review of the BIA's decision.

Yumin Xiang came to the United States on a visa as a visitor for business on September 5, 2011, with authorization to remain for a temporary period not to exceed March 4, 2012. She submitted an application for asylum and withholding of removal with the United States Citizenship and Immigration Services ("USCIS") on January 30, 2012. She alleged that prior to coming to the United States, she and her husband had a son in 1992. As a result, Xiang was given a single-son certification by the family planning office, and was told to follow birth control guidelines. Xiang stated that she suffered persecution under China's strict family planning policies. She alleged that she had been forced to have an abortion when she became pregnant after her first son was born. Further, she had been forced to have intrauterine devices ("IUD") involuntarily inserted on multiple occasions, which caused serious medical issues and loss of her fertility. USCIS denied her application and the Department of Homeland Security issued a Notice to Appear, charging Xiang with removal from the United States for overstaying her visa.

---

[1] Xiang also requested withholding of removal and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). However, she has since abandoned her request for protection under CAT.

On April 12, 2012, Xiang appeared before the IJ, admitted the charges against her, conceded removability, and renewed her request for asylum and withholding of removal. On June 16, 2014, Xiang appeared with counsel and testified before the IJ.

Xiang testified that she suffered persecution for her opposition to China's family planning policy and fears future persecution if she returns to China. According to her testimony, soon after the birth of her son, Xiang became pregnant again. Although she and her family wanted to take the pregnancy to term, the family planning office was informed of her illegal pregnancy through a neighbor. Three women came to her home and forced her to come with them to the hospital. She testified that her mother-in-law was pushed and fell to the ground. Xiang was then placed in a car with the words "District Family Planning Office" on the outside and driven to Sujiatun District Hospital, where her pregnancy was confirmed. Although she resisted and told the officials and doctor that she did not want to have an abortion, the officials dragged her into the surgical room. Xiang stated that she asked the doctor not to perform the abortion. According to Xiang, he told her that she could not escape because the officials were outside the door. He also told her that if she did not have the abortion now, she would have to have the abortion the next day. She then testified that the doctor ordered her to sit on a surgical chair and he performed a painful abortion procedure. After the abortion, she was taken home and used over-the-counter pain medication because she was not given any medication.

Xiang testified that a month later, family planning officials visited her home and informed her she had to get an IUD inserted, or she would "suffer and have more trouble." Xiang complied, but experienced side effects such as pain and longer menstrual periods. When she sought medical help at the hospital, a doctor confirmed that the IUD caused her symptoms, but that he was unable to remove the IUD without a certified letter from the family planning office. Xiang had the device removed at a private clinic.

Xiang testified that she became pregnant again in winter of 1995, and the family planning officials forced her to have a second abortion. Shortly thereafter she was forced to have another IUD inserted. She had it removed by a private clinic when it caused her adverse side effects. During a required annual check-up, required for women of child-bearing age, the doctor ordered another IUD inserted. Because of her complaints of the side effects from the M-ring IUDs, the doctor inserted a T-ring IUD. Xiang once more had this IUD removed at a private clinic.

Xiang then testified that she became pregnant again in the summer of 1998. Although she considered moving away, she was reluctant to do so because her son was still in school. Family planning officials discovered her third pregnancy, and she was forced to have a third abortion and subsequently forced to have another IUD inserted. She testified that she did not remove the IUD until 2003 because she was afraid of having any more procedures. Her last IUD was inserted in 2003, but in 2010 she wished to remove it due to a pelvic inflammatory disease and blocked fallopian tubes. Because she needed to obtain a certified letter from the family planning office to

remove the IUD, Xiang again sought to have it removed at a private clinic.

Xiang testified that she did not have the records of her visits to the private clinic because those clinics do not issue documentation. She also stated that she mailed the original 2010 medical report but it never reached its destination, so she had to provide a copy. When asked why the 2010 medical report only mentions one abortion, Xiang answered: "I was so young. To me, the memory was so fresh, and the suffering was so high." Xiang testified that she told the doctor that she had had three forced abortions, although he noted only one.

The IJ concluded that Xiang was not credible due to her vague and inconsistent testimony. An IJ may properly base credibility determinations on "the consistency between the applicant's … written and oral statements … [and] the internal consistency of each such statement," as well as any inconsistencies between the two. 8 U.S.C. § 1158(b)(1)(B)(ii); *Long-Gang Lin v. Holder*, 630 F.3d 536, 544 (7th Cir. 2010); *Hassan v. Holder*, 571 F.3d 631, 637 (7th Cir. 2009). The IJ asked why her husband stated that her abortion occurred in October and she testified that it occurred in summer. Xiang responded that her husband is old, although the IJ observed that her husband was around 50-years-old and found this explanation insufficient. Prior to Xiang's testimony, she did not mention the three family planning officials who came to her home, or the presence of her mother-in-law when they arrived at her home. When asked about the discrepancies and new facts that were not asserted before her testimony, Xiang responded that "she did not write in such minute detail."

The IJ also found that Xiang did not provide sufficient corroborative evidence to meet her burden to establish eligibility

for asylum or withholding of removal. An applicant for asylum meets her burden of proof without corroboration if her testimony is credible, persuasive, and contains sufficient, specific facts. 8 U.S.C. § 1158(b)(1)(B)(ii). Corroborating evidence is necessary when the applicant's testimony is found not credible. *Lin v. Ashcroft*, 385 F.3d 748, 751 (7th Cir. 2004). Xiang provided copies of her passport, visa, medical records from Shenyang City Hospital, a letter from her husband in China, her and her son's birth certificates, her marriage certificate, and accompanying English translations for each document. The 2010 medical report refers to one past abortion and repeated IUD insertions. The IJ determined that Xiang should have provided more medical records of other routine procedures and annual checkups. Although the testimony is unclear as to whether Xiang could obtain these records, and the IJ acknowledged that the hospital would not keep records of forced abortions, the IJ ultimately concluded that Xiang could have requested or reasonably obtained these medical records. The IJ also found that the husband's letter gave little detail of the abortion and IUD insertions and removals.

The BIA affirmed the IJ's decision that Xiang did not meet her burden on April 29, 2016. What is left unclear in the IJ's decision, however, is a finding of whether Xiang actually had at least one forced abortion. If so, a different analysis would have been required.

Congress has expressly addressed forced abortions in 8 U.S.C. § 1101(a)(42), which provides that a person who has been forced to abort a pregnancy "shall be deemed to have been persecuted on account of political opinion." If an individual seeking asylum is found to have suffered such past persecution, that individual is also entitled to a presumption

of a well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(B); 8 C.F.R. § 1208.13(a)–(b); *Lin v. Ashcroft*, 385 F.3d 748, 752-53 (7th Cir. 2004). The burden then shifts and the government must properly rebut this presumption by a preponderance of the evidence. See 8 C.F.R. §§ 1208.13(b)(1)(i), 1208.16(b)(1)(i).

An applicant can further meet her burden for withholding of removal if she can show a clear probability that her life or freedom would be threatened on account of political opinion. *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010); *Zheng v. Gonzales*, 409 F.3d 804, 809 (7th Cir. 2005). If she can establish past persecution, the applicant meets her burden and her life or freedom is presumed to be threatened. 8 C.F.R. § 1208.16(b)(1)(i).

Thus, if the IJ had credited Xiang's claim that she had at least one forced abortion, she would automatically be entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(B); 8 C.F.R. § 1208.13(a)–(b); *Zheng*, 409 F.3d at 809.

Xiang's first alleged forced abortion in 1994 was mentioned in her application, the medical record she provided, and in her husband's letter. Although the IJ discussed these exhibits and their contents, the IJ was silent on whether she found that Xiang's first forced abortion actually occurred. The IJ found that the testimony about the two other abortions impaired her credibility. The IJ discussed the discrepancies between the details of the first abortion that Xiang and her husband provide, without providing a finding of whether this first abortion actually occurred.

During oral argument, counsel for the government conceded that the IJ made no determination with respect to whether Xiang had been forced to abort a pregnancy. The government also conceded that a finding of at least one forced abortion would have entitled Xiang to a presumption of past persecution.

Because that finding has not been made, or is not clearly stated, we remand for a finding of whether Xiang had at least one forced abortion and then, depending on the finding, the appropriate analysis to follow. Accordingly, we vacate the IJ's decision, and remand to the BIA for further proceedings consistent with this opinion.