NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 14, 2017[*]
Decided June 15, 2017

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 16-4223

| | |
|---|---|
| ANGEL O. CHAVEZ-LAGUNES,<br>*Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A205-829-804 |
| JEFFERSON B. SESSIONS III,<br>Attorney General of the United States,<br>*Respondent*. | |

**O R D E R**

Angel Chavez-Lagunes, a Mexican citizen, moved to reopen his removal proceedings, asserting that changed country conditions qualified him for asylum and withholding of removal. He says that Los Zetas gang members recently murdered his cousin and uncle because of their opposition to the gang, and he fears he will suffer a similar fate if removed to Mexico. The Board of Immigration Appeals denied

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Chavez-Lagunes's motion to reopen, reasoning that he presented insufficient evidence to make a prima facie showing of eligibility for relief. Because the Board overlooked key evidence that supports Chavez-Lagunes's motion, we grant his petition for review.

Chavez-Lagunes and his mother entered the United States without authorization in 2003, when he was 13 years old. A decade later he pleaded guilty to a misdemeanor charge of driving under the influence of alcohol, *see* IND. CODE 9-30-5-1, and was sentenced to 60 days' confinement (suspended except for 2 days' time served) and 6 months' probation (later reduced to 3 months). That conviction also brought him to the attention of immigration officials, who began removal proceedings.

At a hearing before an immigration judge in July 2014, Chavez-Lagunes, through counsel, conceded his removability but requested that the proceedings be continued until after he received a decision on his then-pending request for relief under the Deferred Action for Childhood Arrivals (DACA) program. The government countered, incorrectly, that Chavez-Lagunes's DUI conviction barred him from consideration for DACA relief. *See Frequently Asked Questions*, U.S. CITIZENSHIP AND IMMIGRATION SERVS., https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-process/frequently-asked-questions#national security (visited June 15, 2017) (stating that presence of a significant misdemeanor, such as driving under the influence of alcohol, "is not necessarily determinative, but is a factor to be considered in the unreviewable exercise of discretion"). The judge accepted the government's representation that the DUI conviction would "preclude a favorable decision" on Chavez-Lagunes's DACA application, denied his request for a continuance, and ordered him removed to Mexico.

Chavez-Lagunes then appealed to the Board. In January 2015, while the appeal was pending, his application for DACA relief was denied. The Board upheld the removal order in October 2015, and Chavez-Lagunes did not petition this court to review the Board's decision.

In October 2016, Chavez-Lagunes, with the benefit of a new attorney, moved to reopen the removal proceedings so he could apply for asylum and withholding of removal based on changed country conditions in Mexico. He explained that in 2015 his cousin, Sergio Lopez, had been beaten and killed because he refused to join Los Zetas and Chavez-Lagunes's great uncle also had been killed because he opposed the gang's efforts to recruit Sergio. Chavez-Lagunes added that the gang beat and robbed his great aunt and that there were "a lot of killings" in his hometown in Veracruz.

Chavez-Lagunes attached to his motion some U.S. Department of State country reports about gang violence in Mexico, as well as an application for asylum and withholding of removal, supplemented by an unsworn statement that duplicated the contents of the application. The contents of the application and statement corroborated the allegations in Chavez-Lagunes's motion.

The Board denied Chavez-Lagunes's motion to reopen for two reasons. First, the Board said that the evidence he submitted did not establish that conditions in Mexico had changed materially since his hearing in 2014. The Board in particular faulted Chavez-Lagunes for submitting only "his unsworn statement" and providing few details about the murders. Second, the Board said that Chavez-Lagunes had not shown that "the harm he fears in Mexico is on account of a protected ground for asylum and withholding of removal." The Board acknowledged Chavez-Lagunes's fear that he would be targeted for gang violence because of his family's opposition to the gang, but concluded that he was not "prima facie eligible" for relief because he had not shown that "any other family members were harmed because of their relationship" to his cousin.

In his pro se petition for review, Chavez-Lagunes maintains that the Board abused its discretion when it denied his motion to reopen based on his newfound fear that Los Zetas would target him for violence. When, as here, a motion to reopen is filed more than 90 days after a removal order is issued, the petitioner must show changed conditions in the country to which removal was ordered. 8 U.S.C. § 1229a(c)(7)(C)(i), (ii). We will not disturb the Board's decision to deny a motion to reopen unless it was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis like invidious discrimination against a particular race or group." *Aparicio-Brito v. Lynch*, 824 F.3d 674, 688 (7th Cir. 2016) (quotation omitted).

We agree with Chavez-Lagunes that the Board's explanation for denying his motion to reopen was not rational. The Board in its decision primarily faulted Chavez-Lagunes for "only submit[ing] his unsworn statement regarding the incidents in 2015" and failing to provide any corroborating "documentary evidence." But the Board overlooked Chavez-Lagunes's asylum application in which he affirmed under penalty of perjury that his account of the incidents was true. Chavez-Lagunes's sworn testimony, if credited by an immigration judge, could be sufficient to sustain his burden of proof. *See* 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1231(b)(3)(C); *Xiang v. Lynch*, 845 F.3d 306, 309 (7th Cir. 2017). And although on remand the immigration judge could require

Chavez-Lagunes to provide corroborating evidence, it was premature for the Board to assume that his sworn testimony alone would be insufficient to carry his burden. § 1158(b)(1)(B)(ii) ("The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration[.]"); *Gebreeyesus v. Gonzales*, 482 F.3d 952, 955 n.3 (7th Cir. 2007) (recognizing that Board, in deciding whether to reopen removal proceedings, must accept as true facts in applicant's sworn statement unless they are inherently unbelievable); *Fessehaye v. Gonzales*, 414 F.3d 746, 755–57 (7th Cir. 2005) (same).

We also are skeptical of the Board's conclusion that the harm Chavez-Lagunes says he fears "is not on account of a protected ground." "[W]e consider family to be a cognizable social group within the meaning of the immigration law." *Torres v. Mukasey*, 551 F.3d 616, 629 (7th Cir. 2008); *see also Aldana–Ramos v. Holder*, 757 F.3d 9, 15–16 (1st Cir. 2014) (rejecting Board's view that family is not protected social group unless family member also can claim another protected ground). And Chavez-Lagunes stated in his application that, just as Los Zetas targeted his great uncle because of his relationship to Sergio, Chavez-Lagunes feared the gang would target him because of his familial relationships.

We express no opinion about whether Chavez-Lagunes is entitled to immigration relief. But we conclude that the Board abused its discretion by ignoring the sworn allegations in Chavez-Lagunes's asylum application. Thus, we GRANT the petition for review and REMAND for further proceedings consistent with this order.