In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 15-2359

DANIIAR SANTASHBEKOVICH SANTASHBEKOV,

*Petitioner*,

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent*.

---

Petition for Review of an Order of
the Board of Immigration Appeals
No. A205-800-334

---

ARGUED APRIL 6, 2016 — DECIDED AUGUST 24, 2016

---

Before FLAUM, RIPPLE, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Daniiar Santashbekov petitions for review of an order of the Board of Immigration Appeals denying his application for asylum. The immigration judge found that Santashbekov's claims of political persecution were not credible, and the Board affirmed. We deny Santashbekov's petition because substantial evidence supports the judge's and Board's credibility findings.

I.   *Factual and Procedural Background*

In early 2013, Daniiar Santashbekov filed an application for asylum claiming that he faced persecution for his political activism as a member of the youth wing of the Ata Meken party in his native Kyrgyzstan. His asylum application was denied, and he was served with a Notice to Appear for removal proceedings on April 24, 2013. Santashbekov admitted his removability but renewed his application for asylum.

The Attorney General or Secretary of Homeland Security may grant asylum to an immigrant who has "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" in his home country. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A). The applicant for asylum has the burden of proof, which may be satisfied by the applicant's own testimony if it is credible. 8 U.S.C. §§ 1158(b)(1)(B), 1231(b)(3)(C). A trier of fact may base a credibility determination on a wide variety of factors, "using whatever combination of considerations seems best in the situation at hand." *Mitondo v. Mukasey*, 523 F.3d 784, 789 (7th Cir. 2008); see 8 U.S.C. § 1158(b)(1)(B)(iii). The trier of fact may base an adverse credibility decision on inconsistencies, inaccuracies, or falsehood, and there is no longer any requirement that an "inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim…." 8 U.S.C. § 1158(b)(1)(B)(iii).

Santashbekov's application stems from political unrest in Kyrgyzstan. In April 2010, opposition parties protested and ousted the then-president. Ata Meken was one of the opposition parties, and it became part of a new coalition government. After the 2010 revolution, according to the U.S. State

Department, Kyrgyzstan continued to face instability and human rights problems, including arbitrary arrests and torture by law enforcement and security forces.

The immigration judge characterized Santashbekov's testimony about his own situation as "vague" and "extremely confusing." In essence, Santashbekov testified that he had joined the youth wing of the Ata Meken party at his university in Bishkek in October 2010. After he gave a political speech at his university in December 2010, he began experiencing persecution by a man named Kurmanov, who Santashbekov believes is a member of an opposing political party and a police or government official. Santashbekov testified that Kurmanov and his associates asked him to repudiate the Ata Meken party and detained and beat him several times in 2011. He testified that after the beatings, he was afraid to leave his home and changed his address in Bishkek. Santashbekov also changed his name, which was formerly Sultanhodzhaev. Santashbekov testified that his supervisor at the Ata Meken party, Zhoomart Saparbaev, recommended that he flee the country and helped him.

Santashbekov also submitted documentary evidence to the immigration judge. He submitted hospital paperwork that confirms that he received medical treatment in Kyrgyzstan corresponding to the beatings he described. He submitted criminal court documents showing that Kurmanov was prosecuted and that Santashbekov was named as a "plaintiff" in the proceeding. And Santashbekov submitted a document confirming that he legally changed his name in December 2011. Finally, he submitted a letter from Saparbaev saying that Santashbekov had "helped us working with young people in various activities." The letter does not mention the Ata Meken

party or detail Santashbekov's political involvement, but it is on letterhead from the Jogorku Kenesh, Kyrgyzstan's national legislature.

The immigration judge did not believe Santashbekov's testimony. He made an adverse credibility determination based on the vague and sometimes contradictory nature of Santashbekov's testimony. The judge also found that Santashbekov's documentary evidence was insufficient to support his claims of political activity or persecution. The judge concluded that Santashbekov did not carry his burden of proof and denied the application for asylum. The Board affirmed the immigration judge's denial, also noting inconsistencies in Santashbekov's testimony.[1]

II. *Analysis*

Where the Board affirms the immigration judge's decision and adds its own analysis, as it did here, we review the immigration judge's decision and the Board's additional reasoning. *Darinchuluun v. Lynch*, 804 F.3d 1208, 1214 (7th Cir. 2015). Our review is deferential. We review administrative findings of fact, including credibility determinations, for substantial evidence. *Tawuo v. Lynch*, 799 F.3d 725, 727 (7th Cir. 2015). Under

---

[1] Santashbekov also applied for withholding of removal and protection under the United Nations Convention Against Torture. He has not argued for withholding of removal in his petition for judicial review, and he did not raise the torture claim before the Board or on judicial review. An unauthorized immigrant who does not meet burden of proof for an asylum claim necessarily fails to meet the more stringent requirements for withholding of removal and relief under the Convention Against Torture. *Shmyhelskyy v. Gonzales*, 477 F.3d 474, 481–82 (7th Cir. 2007).

that standard, we must uphold factual determinations "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balogun v. Ashcroft*, 374 F.3d 492, 498 (7th Cir. 2004). We may not reverse an administrative finding of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). An immigration judge's credibility findings should be overturned only under "extraordinary circumstances." *Balogun*, 374 F.3d at 498, citing *Pop v. INS*, 270 F.3d 527, 531 (7th Cir. 2001). Still, an adverse credibility finding must be supported by specific and cogent reasons, and the judge must consider explanations offered for gaps and inconsistencies. See *Lishou Wang v. Lynch*, 804 F.3d 855, 858 (7th Cir. 2015) (granting relief); *Tawuo v. Lynch*, 799 F.3d at 726 (denying relief).

Here, substantial evidence supports the Board's and the immigration judge's finding that Santashbekov's testimony was not credible. The Board and the judge noted that Santashbekov testified vaguely about Kurmanov's identity. He could not identify the political party to which Kurmanov belonged or the part of the government in which he worked. Similarly, as the Board and the judge noted, despite being prompted by the immigration judge, Santashbekov did not explain why Kurmanov would travel the 400 kilometers from Bishkek to Karakol to persecute him, as Santashbekov had claimed he had. Immigration authorities may discredit testimony for lack of "inherent plausibility." 8 U.S.C. § 1158(b)(1)(B)(iii). Santashbekov's vagueness and his failure to clarify the parts of his story the judge found implausible provided sufficient grounds to support an adverse credibility finding. See *Shmyhelskyy v. Gonzales*, 477 F.3d 474, 479 (7th Cir. 2007) (affirming adverse credibility determination where, among

other things, testimony about fear of persecution was "vague and unconvincing").

There are also inconsistencies in Santashbekov's story. Despite a request for clarification at the hearing, Santashbekov did not explain to the judge why his new name appeared on a criminal court document dated August 2011, though he testified that he began using his new name in December 2011 and a name-change document showed the same date. Santashbekov also gave different years for when he joined the Ata Meken party in his asylum application and in his testimony before the immigration judge. He testified that he joined the Ata Meken party in October 2010, but his asylum application said he joined in October 2009.

An inconsistency need not go to the heart of an applicant's claims to justify an adverse credibility determination, but "the inconsistencies spotted by the [judge] should not be trivial." *Tawuo*, 799 F.3d at 727, 728 (inconsistencies in story not "earth-shaking," but provided substantial evidence for credibility determination nonetheless); see also *Chun Sui Yuan v. Lynch*, No. 15-2834, — F.3d —, —, 2016 WL 3536667, at *7 (7th Cir. June 28, 2016) (granting petition; inconsistencies identified by Board were "either so easily explained or so trivial as to call into doubt the Board's decision"); *Shmyhelskyy*, 477 F.3d at 480 ("We have not hesitated to reverse an [immigration judge's] credibility assessment when grounded in trivial details or easily explained discrepancies."). Here, Santashbekov's mistakes regarding important dates and his vague testimony support the adverse credibility determination.

While Santashbekov's documentary evidence may corroborate some aspects of his testimony, it does not undermine the judge's credibility finding. As the Board noted, the letter from Saparbaev does not mention any of the particulars of Santashbekov's claimed political activity or persecution (although a letter from a member of the national legislature may suggest that Santashbekov was somehow involved in politics). As the judge noted, Santashbekov did not submit other evidence from any other party members verifying his political activities. And as the Board noted, the medical evidence corroborates that Santashbekov was injured at the relevant times, but it does not independently establish that political persecution was the cause. The judge did not err by giving the medical records limited weight because of the vague testimony about how they were obtained. See *Tawuo*, 799 F.3d at 729 (it was asylum applicant's burden to authenticate documents; no error in refusing to let applicant submit more documents to corroborate testimony after immigration judge found initial round of documents "wanting").

Some aspects of the Board's and judge's decisions, however, are troubling. For example, the judge wrote that Santashbekov's parents and sibling in Kyrgyzstan remain "well and intact." But in his asylum application and in the hearing before the judge, Santashbekov said the same people who persecuted him had also beaten his brother and broken his brother's leg. Santashbekov submitted a medical document corroborating his brother's injury (although, as noted above, the judge did not err by giving medical records limited weight).

Similarly, the Board and immigration judge found that Santashbekov's testimony that he was not involved in the

April 2010 protests, and that nothing bad happened to him as
a result of the protests, was inconsistent with his asylum ap-
plication. The application indicated that his political persecu-
tion was due "to the incidents *related* to the April 7, 2010 pro-
tests and the *following* chaos" (emphasis added). We are mind-
ful of our deference to the Board and immigration judge in
the area of credibility, but Santashbekov's asylum application
did not claim he was involved directly in the April 2010 pro-
tests. His asylum application made clear that his persecution
was due to the chaos *related to* and *following* the April 2010
protests that led to the then-president's ouster. We do not see
a basis for discrediting Santashbekov here.

We are also troubled by the Board's and immigration
judge's concern that Santashbekov's asylum application did
not include many of the details in his testimony before the
judge, such as his December 2010 political speech. Material
omissions may certainly support an adverse credibility find-
ing. *Shmyhelskyy*, 477 F.3d at 480 (we may uphold adverse
credibility findings when petitioner is "unable to explain a
significant discrepancy between her hearing testimony and
her asylum application"), citing *Korniejew v. Ashcroft*, 371 F.3d
377, 386 (7th Cir. 2004). However, the I-589 asylum application
form provides small boxes to detail an applicant's experi-
ences, containing space for about ten lines of text. We caution
against drawing adverse credibility conclusions from an ap-
plicant providing differing levels of detail in such different
contexts. The limited space on the I-589 form provides a read-
ily apparent reason why Santashbekov was able to provide a
more detailed account of his alleged persecution at the hear-
ing than on the application. Cf. *Shmyhelskyy*, 477 F.3d at 481
(applicant "provided no reason for his failure to allege this

beating in his asylum application"). The Board's and the immigration judge's decisions were thus not flawless, but both considered Santashbekov's claims and evidence, made reasoned decisions, and supported their decisions with substantial evidence.

Finally, Santashbekov argues that the Board and immigration judge violated his due process rights by dismissing his arguments "with no analysis" and failing to "give fair and proper weight to the evidence at hand … ." See *Reno v. Flores*, 507 U.S. 292, 306 (1993) (Fifth Amendment entitles aliens to due process of law in deportation proceedings). This argument is wide of the mark. The Board and the judge provided ample analysis to justify their decisions. Santashbekov's argument that the Board and judge incorrectly weighed the evidence "is indistinguishable from a straightforward claim that [their decisions were] not supported by substantial evidence on the record." *Albu v. Holder*, 761 F.3d 817, 822 (7th Cir. 2014). That argument fails both as a due process claim and on the merits.

Accordingly, Santashbekov failed to carry his burden of proof to establish his eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). The petition for review of the Board's decision is DENIED.