NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 21, 2021[*]
Decided January 22, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 20-1638

| | |
|---|---|
| SUKHDEEP SINGH,<br>　*Petitioner*, | On Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A208-177-595 |
| MONTY WILKINSON,<br>Acting Attorney General of the United States.<br>　*Respondent*. | |

### O R D E R

Sukhdeep Singh, an Indian citizen belonging to a Sikh-dominated political party, petitions for review of an order of the Board of Immigration Appeals upholding the denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture. Because substantial evidence supports the Board's determination, we deny his petition.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C). We have substituted Monty Wilkinson, the acting Attorney General, for the respondent. FED. R. APP. P. 43(c).

Singh's claim for asylum and associated relief arises from his adherence to Shiromani Akali Dal Amritsar, also known as the Mann Party, a Sikh-dominated political party and separatist group. Singh, who is from Punjab in northern India, began working for the Mann Party in December 2013. He supported the party's efforts to help the underprivileged in Punjab and to create an independent state for Sikhs.

In mid-2014, members of another Sikh-dominated political party, the Badal Party, began targeting Singh for his involvement in the Mann Party, which they believed was splitting the Sikh vote and threatening the Badal Party's power. As Singh testified, he started receiving phone calls from persons who threatened violence if he did not disassociate from the Mann Party. In November 2014, members of the Badal Party attacked Singh and beat him unconscious. When he tried to report the incident, the police refused to listen to him. In February 2015, he was assaulted by the same attackers but managed to escape. A few weeks later he fled India, and in May he was smuggled into the United States.

The Department of Homeland Security promptly initiated removal proceedings, charging Singh with entering the United States without a valid entry document. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). He conceded that he was removable as charged. In 2016, he applied for asylum, 8 U.S.C. § 1158, withholding of removal, 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. § 1208.16(c), based on the harm he suffered due to his political opinion and association with the Mann Party. In early 2018, the immigration court in San Francisco scheduled a merits hearing for three years out, in January 2021.

In the meantime, Singh married a U.S. citizen, moved from California to Indiana, and hired new counsel. In April 2018, he sought a change of venue to the immigration court in Chicago. On May 2, the San Francisco immigration court granted his request.

In Chicago, the pace of the proceedings quickly picked up. On May 9, the immigration court informed Singh that a hearing date in the matter had been set for May 23. On May 10, Singh's newly retained counsel moved for a continuance, asserting that 14 days' notice was insufficient time to prepare for the hearing, obtain supporting evidence, and meet the immigration court's expectation that supporting materials be filed within 15 days of the hearing. *See* IMM. CT. PRACT. MAN. 3.1(b)(ii)(A) (2018) ("[F]or

individual calendar hearings … , filings must be submitted at least fifteen (15) days in advance of the hearing."). On May 14, the court denied the continuance.

On May 23, the hearing proceeded as scheduled. Singh's counsel renewed the request for a continuance. Counsel submitted an affidavit from Singh's proposed expert witness, a scholar of South Asian religions familiar with the persecution of Sikhs, who attested that she did not have sufficient notice to evaluate Singh's circumstances in time for the hearing. Counsel also attached the order from the San Francisco court showing that the hearing had previously been set for January 2021.

An immigration judge determined that Singh had not demonstrated just cause for a continuance and denied the request. Singh's counsel, the IJ stated, had not explained why Singh was unable in the three years since filing his application to gather evidence or arrange for an expert, nor did he specify what testimony an expert would offer or what additional evidence he sought to present. As for the short turnaround between the notice of hearing and the hearing itself, Singh had not explained why two weeks was insufficient time to have original documents sent to him by air mail.

The IJ then proceeded with the scheduled merits hearing and denied the requested relief. She determined that Singh was not credible and lacked evidence to corroborate his testimony. Singh struggled, she said, to explain the tenets of the Mann Party, identify the people he worked with, and describe his journey to America, even giving two different dates for his departure from India (February 24 and March 4). The IJ also noted inconsistencies between Singh's testimony and details in his father's affidavit (over the number of attackers, whether Singh went to a hospital after the attack, whether he was rendered unconscious, whether the second attack involved a sword, and whether Singh received a death threat in late February). Because she found Singh not credible, the IJ explained that the REAL ID Act, *see* 8 U.S.C. § 1229a(c)(4)(B), which governs this case, required him to corroborate the details of his account, and he failed to do so. Singh provided no evidence, the IJ added, to corroborate that he sought medical treatment, was mistreated on account of his political activity, or received threatening phone calls.

Singh then sought review by the Board of Immigration Appeals, which upheld the IJ's rulings. The Board endorsed the adverse credibility determination, agreeing with the IJ that Singh's testimony contained material inconsistencies and omissions, and

that his corroborative evidence did not sufficiently rehabilitate his discredited testimony. As for the motion to continue, the Board agreed with the IJ that Singh had not shown good cause for a continuance: Singh already had been in removal proceedings for three years, he had retained new counsel three months before the hearing, and he did not adequately explain why he did not earlier try to gather evidence and present an expert witness.

Singh first challenges the adverse credibility determination on grounds that the IJ and the Board relied on minor inconsistencies that were easily explained. For instance, regarding the discrepancies between his testimony and his father's, he argues that his father was not present at the attacks and that his own recollections were clouded by his injuries that night. Singh also argues that too much was made of his lack of familiarity with the ins and outs of the Mann Party, given his low-level status with the group.

Singh faces a high evidentiary burden, however, in challenging the adverse credibility finding. We will overturn a credibility determination only under "extraordinary circumstances" in which the IJ and the Board did not support their conclusions with specific evidence, and the facts compel the opposite conclusion. *See Santashbekov v. Lynch*, 834 F.3d 836, 839 (7th Cir. 2016).

The IJ justified her adverse credibility finding by highlighting the inconsistent nature of Singh's testimony. Singh testified, for example, that he was attacked by five individuals, rendered unconscious, and that he did not go to the hospital because it was run by the Badel Party; but his father asserted in his affidavit that the number of attackers was four, that Singh came home "upset" and with just a "bloody nose," and that they went to the hospital (though they were turned away). Because these inconsistencies call into question details about an attack central to Singh's claim, they cannot be dismissed as trivial. *See Alvarenga-Flores v. Sessions*, 901 F.3d 922, 925–26 (7th Cir. 2018). The IJ also pointed out that Singh testified about unusual details (i.e., the sword and the death threat) that were not mentioned anywhere in his application or supporting materials. *See Santashbekov*, 834 F.3d at 841. And the IJ appropriately highlighted the discrepancy over the date when Singh left India. *See Krishnapillai v. Holder*, 563 F.3d 606, 618 (7th Cir. 2009). Based on these inconsistencies, we cannot conclude that any reasonable factfinder would be compelled to disagree with the IJ's determination. *See* 8 U.S.C. § 1252(b)(4)(B); *Santashbekov*, 834 F.3d at 839.

Singh also argues that the IJ deprived him of a full and fair hearing by denying him a continuance to allow his new lawyer more time to prepare his case. Because the immigration court in San Francisco had postponed his merits hearing until January 2021, Singh maintains that the Chicago immigration court's decision to hold his hearing abruptly in May 2018—with only 14 days' notice—prejudiced him by limiting his time to obtain corroborating evidence.

We review the denial of a continuance for abuse of discretion and will uphold the decision so long as it was based on a rational explanation. *See Toure v. Barr*, 926 F.3d 403, 407 (7th Cir. 2019). As the Board reasonably explained, Singh had three years while removal proceedings were pending to gather whatever evidence he needed to present his case. True, Singh had only two weeks' notice of his hearing in Chicago, but he sought the change in venue, and he should have known that the Chicago court would not be bound by the San Francisco court's timeline. As the Board also explained, Singh did not identify the documents he hoped to procure or why they were important to his application. Lastly, to the extent Singh suggests that the denial of a continuance violated his right under 8 U.S.C. § 1229a(b)(4)(B) to present evidence on his own behalf, the Board was right to conclude that Singh cannot show prejudice, in light of the adverse credibility finding and his failure to specify what evidence he needed more time to obtain. *See Souley v. Holder*, 779 F.3d 720, 724 (7th Cir. 2015).

DENIED