In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-2177

MEIXIANG CUI,

*Petitioner*,

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A201-004-428

_____

SUBMITTED NOVEMBER 30, 2022[*] — DECIDED JUNE 16, 2023

_____

Before WOOD, JACKSON-AKIWUMI, and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Meixiang Cui petitions for review of the denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture. The

[*] We granted the joint motion to waive oral argument, and the appeal is therefore submitted on the briefs and the record. FED. R. APP. P. 34(a)(2)(C).

immigration judge found that Cui was not credible due to her inconsistent and evasive testimony. The Board of Immigration Appeals affirmed. Because substantial evidence supports the adverse credibility determination, we deny Cui's petition for review.

## I.       Background

### A.       Factual Background

Cui, a 52-year-old woman, is a citizen of China. In April 2011, she entered the United States on a temporary business visa. In October 2011, Cui filed an application for asylum, *see* 8 U.S.C. § 1158, and withholding of removal, *see id.* § 1231(b)(3), under the Immigration and Nationality Act. She also applied for protection under the Convention Against Torture, *see* 8 C.F.R. § 1208.16(c).

In her application, Cui asserted that Chinese officials had previously forced her to undergo two involuntary abortions, and she feared that authorities would forcibly sterilize her if she returned to China. Cui submitted an affidavit in support of her application. According to the affidavit, Cui gave birth to her only child in April 1999. Family-planning officials then forced Cui to insert a contraceptive ring (also called an intra-uterine device, or an IUD). Cui secretly removed this IUD in 2003. In early 2004, Cui became pregnant again, but officials forced her to undergo an abortion and insert another IUD. The affidavit did not clarify whether Cui removed this IUD. But Cui became pregnant again in 2010. When Cui was five months pregnant, family-planning officials discovered the pregnancy and forcibly took her to the hospital, where doctors induced a stillborn birth. The officials also ordered that

Cui be sterilized in six months. Before she could be sterilized, Cui fled to the United States.

In addition to submitting this affidavit, Cui also provided an "outpatient certificate" from "Central Hospital of Fushun" as part of her asylum application. The certificate states that Cui had an "induced abortion" on November 8, 2010, and included a suggestion that Cui rest for one month.

After Cui filed her asylum application, the government commenced removal proceedings. In March 2012, Cui appeared before an immigration judge in Chicago and conceded removability as charged. The judge scheduled a hearing as to her asylum application, request for withholding, and request for relief under the Convention Against Torture for February 23, 2015.

This February 2015 hearing ended up focusing on Cui's activities in the United States, rather than her claimed persecution in China. That is because a background check revealed that in 2011, Cui had been arrested in Minnesota—a fact that Cui had not disclosed to the immigration judge. Additionally, Cui had received two citations in 2012 for an incident at a massage spa in Oklahoma. Although she disclosed these citations to the judge, she did not provide much documentation about them. The immigration judge therefore requested a full record of both incidents and scheduled another hearing. Before that hearing occurred, Cui encountered more legal troubles. In 2017, she pleaded guilty to a misdemeanor offense of running a massage spa without a license in Missouri.

On December 10, 2018, Cui finally had her merits hearing. At that hearing, Cui largely repeated the claims that she had made in her 2011 affidavit. Cui testified that at some point

after giving birth to her only child, family-planning officials forced her to insert an IUD, which she had removed in 2003 at a private clinic. Cui became pregnant in early 2004, but family-planning officials forced her to have an abortion and insert another IUD. Cui testified that she had this second IUD removed at the same private clinic where she went for the first removal. When the government pointed out that she did not include this detail in her affidavit, Cui said, "I don't remember why I didn't put it in. I may have overlooked it."

Cui also described her second abortion at the hearing. She testified that the abortion happened at "Fushun City Number Four Hospital." When the government noted that her outpatient certificate said the abortion occurred at "Central Hospital Fushun," Cui explained that she may have made a mistake because it was so long ago. Cui additionally confirmed that, as noted on the outpatient certificate, the doctor had told her she needed to rest for a month after the abortion; according to the doctor's instructions, she was supposed to "stay bedridden" during this time. Cui said that she "kind of" rested during this month. Concerning the outpatient certificate, Cui also testified that she did not receive the certificate directly from the hospital after her abortion, but from a friend who obtained the certificate after Cui was already in the United States.

Next, Cui testified about her entry into the United States. Cui explained that, in February 2011, she contacted a smuggler to help get her into the United States. Cui testified that this was the first time she had ever applied for a visa. When the government pointed out that she had applied for a visa in November 2010, Cui clarified that she remembered applying once and then applying again after the first one was rejected. Cui also confirmed that she went in for an interview

(presumably to the United States Embassy) on November 30, 2010, apparently as part of her first application. This interview was within one month of her second abortion, when she was supposed to be on bedrest.

Finally, Cui testified about her activities in the United States—namely, her work history, residences, and criminal history. According to Cui's asylum application, she had lived in Chicago from her arrival to the United States in April 2011 until she submitted her application in October 2011. For her December 2018 hearing, Cui submitted a document listing her residences and work history, but only beginning in January 2012. According to that document, Cui lived in Oklahoma and Missouri from 2012 to the present; the document did not state that Cui had lived in Chicago in 2011 or any time afterwards. At the hearing, Cui testified that she currently lives in Chicago, but also said that she only comes to Chicago for short periods of time, when she has "things" to take care of in the city. When the immigration judge asked Cui about where she lived in Chicago, Cui could not provide a full address.

Cui also testified about each of her run-ins with the law in this country. When asked about her 2011 arrest in Minnesota, Cui first denied that she was ever arrested. She then admitted that she was initially charged with a crime, but insisted that the situation was a misunderstanding, as the police were investigating the massage spa where she happened to be. Cui never provided any documentation concerning this arrest, despite the immigration judge's earlier instruction to do so. As for her two Oklahoma citations from 2012, Cui testified that those citations arose when a customer at her sister's massage spa accused Cui of providing massages without a license. Cui then denied working at her sister's spa at the time (instead,

she claimed to be staying there temporarily) and denied providing the customer a massage (though she admitted to leading him to a different room in the spa). Finally, Cui admitted that she ran a spa without the proper licensing, which was the conduct underlying her Missouri misdemeanor from 2017. But Cui again denied culpability, explaining that she did not know she needed a state license in addition to a local license.

### B.    Agency Decision

On December 10, 2018, the immigration judge issued an oral decision denying all of Cui's claims for immigration relief, largely because her testimony was not credible. To support the adverse credibility determination, the judge pointed to five inconsistencies: (1) Cui's 2011 affidavit did not mention that she had her second IUD removed at a private clinic, even though she testified to this effect at the hearing; (2) the name of the hospital where she had her second abortion in 2010 was different on the outpatient certificate than what she claimed; (3) Cui testified that she first applied for a visa shortly after she had contacted the smuggler in February 2011, but in fact she had filed a visa application in November 2010, when she was supposed to be on bedrest; (4) Cui did not testify truthfully about where she had lived in the United States, falsely claiming to have lived in Chicago; and (5) Cui did not testify truthfully about her criminal activities in the Unites States. Additionally, the immigration judge concluded that Cui had failed to sufficiently corroborate her claim with credible evidence.[1]

---

[1] The immigration judge also provided two alternative grounds for denying asylum: that Cui had failed to provide documentation of her

The Board of Immigration Appeals issued a written opin-
ion, affirming the immigration judge's "adverse credibility
determination, as it [wa]s not clearly erroneous." In doing so,
the Board highlighted most (but not all) of the inconsistencies
that the judge relied upon when making this finding. The
Board also affirmed the immigration judge's conclusion that
Cui had failed to provide sufficient corroborating evidence.[2]

## II.     Legal Framework

### A.     Claim for Asylum

As noted, Cui applied for asylum, withholding of removal,
and protection under the Convention Against Torture. We fo-
cus on her claim for asylum because the burden of establish-
ing asylum is less stringent than the burden of establishing
her other claims. *Alvarenga-Flores v. Sessions*, 901 F.3d 922, 926
(7th Cir. 2018). Thus, if Cui cannot establish eligibility for asy-
lum, her remaining claims fail as well. *Id.*

The Attorney General has discretion to grant asylum to an
individual who qualifies as a "refugee," meaning someone
"who is unable or unwilling to return to … [the country of her
nationality] because of persecution or a well-founded fear of
persecution on account of race, religion, nationality, member-
ship in a particular social group, or political opinion."
8 U.S.C. § 1101(a)(42)(A); *see id.* § 1158(b)(1)(A). By statute, "a

---

Minnesota arrest, and that the judge would deny asylum as a matter of
discretion. The Board did not affirm on these alternative grounds, and so
we do not consider them either.

[2] Additionally, the Board concluded that Cui's evidence about the
general human rights conditions in China did not establish relief from re-
moval. Cui did not challenge this on appeal, and so any argument con-
cerning country conditions is waived.

person who has been forced to abort a pregnancy or to undergo involuntary sterilization … shall be deemed to have been persecuted on account of political opinion." *Id.* § 1101(a)(42)(B). If an asylum applicant establishes past persecution, "a presumption arises that [she] also has a well-founded fear of future persecution for the same reason." *Yi Xian Chen v. Holder*, 705 F.3d 624, 628 (7th Cir. 2013); *see* 8 C.F.R. § 208.13(b)(1).[3]

The applicant bears the burden of establishing that she is a qualifying refugee. 8 U.S.C. § 1158(b)(1)(B)(i). "In some cases, the applicant may carry the burden through testimony alone, but only if the immigration judge finds the testimony credible and persuasive." *Cojocari v. Sessions*, 863 F.3d 616, 620 (7th Cir. 2017) (citing 8 U.S.C. § 1158(b)(1)(B)(ii)).

The REAL ID Act of 2005 governs how an immigration judge makes credibility determinations. When making an adverse credibility finding, the judge may rely on any inconsistencies in the applicant's testimony, not just inconsistencies at the "heart" of her claim. *Cojocari*, 863 F.3d at 620 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). At the same time, the immigration judge must "distinguish between inconsistencies … that are material and those that are not." *Krishnapillai v. Holder*, 563 F.3d 606, 617 (7th Cir. 2009). Trivial inconsistencies or innocent mistakes cannot support an adverse credibility

---

[3] Where the applicant establishes past persecution (and therefore is entitled to a presumption of well-founded fear of future persecution), the burden of proof shifts to the government to rebut this presumption by a preponderance of the evidence. 8 C.F.R. § 208.13(b)(1); *see Xiang v. Lynch*, 845 F.3d 306, 309–10 (7th Cir. 2017). Cui did not make any argument concerning the burden-shifting framework on appeal and, thus, any such arguments are waived.

determination. *See Cojocari*, 863 F.3d at 622 (remanding where most of the purported inconsistencies were "so trivial or benign that they cast no reasonable suspicion on the substance of [the applicant's] testimony"); *Chun Sui Yuan v. Lynch*, 827 F.3d 648, 656 (7th Cir. 2016) (remanding where the purported inconsistencies were "either so easily explained or so trivial as to call into doubt the Board's decision"). Finally, "an adverse credibility finding must be supported by specific and cogent reasons, and the judge must consider explanations offered for gaps and inconsistencies." *Santashbekov v. Lynch*, 834 F.3d 836, 839 (7th Cir. 2016).

## B.    Scope of Review

"Where the Board of Immigration Appeals agrees with the immigration judge's decision but supplements that decision with its own analysis, as it did here, we review both the underlying decision and the Board's additional reasoning." *Cojocari*, 863 F.3d at 621. We "consider not only those aspects of the immigration judge's decision that the Board chose to emphasize but also those findings that the Board implicitly endorsed." *Id.* at 621 n.2.

In this case, the Board affirmed the immigration judge's credibility and evidentiary findings. In her petition for this court's review, Cui focuses almost entirely on the adverse credibility determination. She spends only a single sentence on the immigration judge's conclusion that her evidence did not sufficiently corroborate her account; this sentence concedes that Cui's evidence was "limited" and provides no relevant authority to argue that the evidentiary findings were in

error.[4] Thus, any challenge to the evidentiary findings is waived, *see Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."), and we limit our consideration to the immigration judge's adverse credibility determination.

Our review of this determination is deferential. We uphold the immigration judge's factual findings so long as they are supported by substantial evidence. *Santashbekov*, 834 F.3d at 839. This is particularly true for credibility findings, which are overturned only in "extraordinary circumstances." *Id.* (quoting *Balogun v. Ashcroft*, 374 F.3d 492, 498 (7th Cir. 2004)).

### III.    Analysis

This is not an "extraordinary" case where the adverse credibility determination should be overturned. Although not all of the immigration judge's reasons for discounting Cui's testimony are compelling, the judge's ultimate determination was supported by substantial evidence.

Most significantly, the immigration judge found that Cui's testimony about her time in the United States—including where she lived and her criminal record—was not truthful or forthright. For instance, in both her 2011 asylum application and at her immigration hearing, Cui stated that she lived in Chicago, but the immigration judge concluded that she never lived there. On appeal, Cui argues that this was in error,

---

[4] Instead, Cui cites several decisions by the Board confirming that forced sterilization and forced abortion constitute persecution on account of political opinion. This does not address the immigration judge's conclusion that her evidence failed to sufficiently corroborate her claim that she underwent a forced abortion.

because she simply testified that she had lived in various states for brief periods and always maintained her residence in Chicago. But the immigration judge's finding was supported by substantial evidence: Cui could not list her Chicago address, testified that she only comes to Chicago when she has business there, and did not list Chicago on the document describing her prior residences.

The immigration judge's discussion of Cui's criminal record was also reasonable. Cui had multiple encounters with the law during her time in the United States (all related to improper or unlicensed massage work), but denied any culpability at the immigration hearing regarding the Oklahoma citations and the Missouri misdemeanor. Furthermore, Cui testified inconsistently about whether she had been arrested in Minnesota and failed to submit any documentation for that arrest (despite instructions from the immigration judge to do so). On this record, we cannot fault the immigration judge for being troubled by Cui's refusal to "admit to any wrongdoing" regarding her Oklahoma citations, nor the judge's conclusion that Cui's explanations for her criminal record lacked credibility. *Cf. Tawuo v. Lynch*, 799 F.3d 725, 728 (7th Cir. 2015) ("When caught in what appeared to be a lie, [the applicant] provided an unconvincing explanation. The [immigration judge] was well within his rights to regard this as evidence of a lack of credibility."). Although Cui continues to insist that she testified about her criminal history truthfully, she merely reiterates the explanations that she provided to the immigration judge. We will not disturb the judge's rejection of her excuses unless the record "compels" such a result, *see Zhakypbaev v. Sessions*, 880 F.3d 881, 887 (7th Cir. 2018), and Cui has not shown that the judge's conclusions lack substantial support in the record.

Next, the immigration judge cited Cui's inconsistent testimony about her visa application process. Although Cui initially testified that she first applied for a visa after contacting a smuggler in February 2011, she later acknowledged that she previously had applied for a visa in November 2010. Moreover, Cui had a visa interview in conjunction with this first application. The immigration judge reasonably concluded that Cui's shifting and internally inconsistent story reflected an overall lack of credibility. *See Tawuo*, 799 F.3d at 728 (applicant's changing story about his visa application process supported the adverse credibility determination). Cui's arguments on appeal do not alter this conclusion, and she offers no compelling explanation for why she initially testified that the smuggler-assisted application was her first.

The immigration judge also pointed out that, at the hearing, Cui provided a slightly different name for the hospital where she had her second abortion, as compared to the name listed on her outpatient certificate. This minor mistake does not necessarily cast doubt on Cui's testimony. *See Cojocari*, 863 F.3d at 622 (immigration judges cannot place "outsized importance" on "the sorts of minor details that are most vulnerable to the vagaries of human memory," such as small mistakes about dates and times). But the immigration judge was also concerned about the authenticity of the outpatient certificate because Cui did not receive the certificate from the hospital, but from a friend who mailed it to the United States after the abortion allegedly occurred. On appeal, we defer to the immigration judge absent "extraordinary circumstances," and we are not convinced that this record presents such circumstances.

We are less concerned by the last discrepancy in Cui's story. The immigration judge noted that Cui did not discuss the removal of her second IUD in her affidavit, but she did detail this incident at her hearing. On its own, this type of minor discrepancy between an applicant's pre-testimony written statement and more detailed testimony given at a live hearing might not support an adverse credibility determination. *See Cojocari*, 863 F.3d at 624. But, in combination with the other inconsistencies identified by the immigration judge, we are satisfied that the judge's determination was supported by substantial evidence.

**IV.     Conclusion**

In sum, the record shows that the immigration judge considered Cui's testimony and evidence, pointed to several material inconsistencies and instances of evasive or untruthful testimony, and determined that Cui's overall testimony lacked credibility. These findings find substantial support in the record. Thus, Cui has not met her burden to establish eligibility for asylum. And, because the burdens for securing withholding of removal or protection under the Convention Against Torture are more stringent, those claims fail as well. Accordingly, Cui's petition for review is DENIED.