In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-1192

KAMALJIT SINGH,

*Petitioner,*

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A216-629-184

ARGUED OCTOBER 30, 2023 — DECIDED JANUARY 2, 2024

Before EASTERBROOK, RIPPLE, and SCUDDER, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Kamaljit Singh, a native and citizen of India, applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). After a hearing, an immigration judge ("IJ") denied Mr. Singh's application on multiple grounds. The Board of Immigration Appeals ("BIA" or "Board") affirmed the IJ's decision. Mr. Singh now petitions for further review. He submits

that the BIA erred in denying his application and that he was denied due process in his proceedings before the IJ. For the reasons set forth in this opinion, we deny Mr. Singh's petition.

# I

## BACKGROUND

Mr. Singh was born in India and is an Indian citizen. He left India in November 2017 after he was attacked twice by members of one of India's leading political parties. He then traveled through eight countries, each of which denied his requests for asylum. He arrived in the United States in March 2018. The Government instituted removal proceedings, and Mr. Singh, on bond and living in Wisconsin, applied for asylum, withholding of removal, and CAT protection. He submitted an I-589 application form, a separate written statement, and other documentary evidence, and an immigration judge held a hearing on his claims.

Mr. Singh gave the following account of his difficulties in India. In January 2017, he began supporting the activities of the Shiromani Akhali Dal (Amritsar) Party, a minority political party in India commonly known as the Mann Party (hereinafter, "Mann Party"). He was inspired by work that the Mann Party did for the poor in his community, which included organizing blood drives, eye exam camps, and wedding ceremonies for poor couples. He is also Sikh, and the Mann Party is predominantly Sikh. He estimates that he volunteered for the Mann Party on ten to twelve occasions. He is not, however, a member of the Party.

Mr. Singh was first attacked in May 2017, while he was hanging up posters for a Mann Party blood drive. A car bearing the logo of the Bharatiya Janata Party ("BJP") approached.

Four men exited the car and asked why he was hanging the posters. When Mr. Singh told them he was working for the Mann Party, they told him to join the BJP instead and to sell drugs with them. Mr. Singh refused. The men became angry and proceeded to slap and kick him. Bystanders intervened, and the men left. Mr. Singh was injured, but the extent of his injuries is not clear. He testified that his teeth were broken and that he got stitches on his lip and head; however, a report from the medical clinic he visited later that day, as well as both the initial and amended written statements he submitted with his application, refer only to swelling and bruises. There is no mention of broken teeth, cuts, or stitches. When Mr. Singh and his uncle tried to report the attack at a local police station, the police sent them away and threatened to put them in jail if they complained about the BJP again.

Mr. Singh was attacked a second time in September 2017, while biking home after helping set up a wedding organized by the Mann Party. As in the first incident, a car bearing the BJP logo approached. Four men exited and yelled at him for continuing to work for the Mann Party. They beat him with hockey sticks, stopping only when nearby farmers intervened. Upon leaving, the men told him that because he had not joined the BJP as they had asked, he must face the consequences. Mr. Singh went to a local hospital, where he stayed overnight. He went from the hospital to his uncle's home and then to another uncle's home in a different part of India. From that uncle's home, he went to Delhi and then left the country. Since his departure, police and members of the BJP have visited his mother's home on multiple occasions, asking about his whereabouts and threatening to hurt him. Relocation elsewhere in India is not feasible, Mr. Singh submits, because the

BJP can track him using India's Online ID system and can identify him based on his scars.

The IJ denied Mr. Singh's application. She found his account not credible for multiple reasons, including the absence of any reference to cuts, stitches, or broken teeth in his written statement and in the medical clinic's report. The IJ alternatively concluded that, even if she were to find that the information Mr. Singh provided was credible, she would still deny his application. According to the IJ, the attacks Mr. Singh described were "sporadic" and "not serious enough to amount to past persecution."[1] She further found that Mr. Singh had not established that relocation elsewhere in India was not feasible, because, in her view, it was implausible that someone with no public role in the Mann Party and who was not even a member would be tracked electronically by high-level opponents of the Mann Party and would be identifiable throughout all of India by his scars. She also concluded that Mr. Singh's CAT claim failed for the additional reason that the threats he described from the police did not constitute threats to torture him.

The BIA dismissed Mr. Singh's appeal. It concluded that the IJ's adverse credibility finding was not clearly erroneous and affirmed the IJ's decision on that basis. The Board added, in the alternative, that Mr. Singh's claims failed on the merits. It agreed with the IJ that the harm Mr. Singh described did not amount to past persecution. It also deemed waived any challenge to the IJ's determination that Mr. Singh had failed

---

[1] AR 78, 79.

to show that he could not avoid future persecution by relocating within India. It also affirmed the IJ's denial of Mr. Singh's CAT claim, both because Mr. Singh's challenge to that denial was waived and because the IJ's finding regarding the severity of the threats he faced was not clearly erroneous.

## II

## DISCUSSION

### A.

We now turn to the merits. Mr. Singh applied for asylum, withholding of removal, and CAT protection. To be eligible for asylum, an applicant must show "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" in his home country. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A). To be eligible for withholding of removal, an applicant must establish a "clear probability of persecution." *Orellana-Arias v. Sessions*, 865 F.3d 476, 488 (7th Cir. 2017); *see* 8 U.S.C. § 1231(b)(3). For CAT protection, the applicant must show that it is "more likely than not that he or she will be tortured" if returned. 8 C.F.R. § 1208.16(c)(2). An applicant's ability to relocate creates grounds to reject each of these forms of relief. 8 C.F.R. §§ 1208.13(b)(3), 1208.16(b)(1)(i)(A)-(B), (c)(3).

Our cases recognize the importance of the agency's credibility determination for the evaluation of these claims. *See Capric v. Ashcroft*, 355 F.3d 1075, 1085–86 (7th Cir. 2004). The immigration judge may base a credibility determination on a variety of factors, including the detail, consistency, and inherent plausibility of the account. 8 U.S.C. § 1158(b)(1)(B)(iii). In this case, the inconsistent accounts about the seriousness of

the first attack justified the agency's adverse credibility finding. Mr. Singh testified that the first incident left him needing stitches on his lip and head and with broken teeth. But his written statement and the report from the physician who treated him on the day of the attack do not indicate anything other than swelling and bruises. This missing information is precisely the sort one would expect to see in a written statement and in a physician's report. Its absence raises the inference that Mr. Singh exaggerated the seriousness of his injuries at the hearing. *See Rama v. Holder*, 607 F.3d 461, 466 (7th Cir. 2010) (absence of reference to claimed torn clothes, bruises, and cuts in medical documentation supported adverse credibility finding); *Shmyhelskyy v. Gonzales*, 477 F.3d 474, 481 (7th Cir. 2007) (absence of reference to claimed physical mistreatment in one particular detention supported adverse credibility finding). The agency was entitled to draw that inference.

Mr. Singh contends that the agency over-relied on the omissions in his written statement, given his inability to speak English and alleged issues with his legal representation that he believes were apparent from the record. Indeed, we have cautioned against over-reliance on omissions in I-589 asylum forms. *Santashbekov v. Lynch*, 834 F.3d 836, 841 (7th Cir. 2016); *Pop v. INS*, 270 F.3d 527, 532 (7th Cir. 2001). Some of the reasons for that caution, such as "poor translators, careless or unscrupulous preparers, [and] lack of legal counsel," also could affect the reliability of separate written statements. *Georgieva v. Holder*, 751 F.3d 514, 520 (7th Cir. 2014). That said, the omission in Mr. Singh's statement was significant, and the IJ who heard Mr. Singh's testimony considered the omission in light of other inconsistencies in the record, including a similar omission in the medical clinic's report. Regarding that report, Mr. Singh contends that the IJ should have requested his other

medical records before concluding that the injuries he testified to were not reflected in the clinic's records. But it was Mr. Singh's job, not the IJ's, to obtain any medical documentation he wanted in evidence. *See, e.g.*, *Tawuo v. Lynch*, 799 F.3d 725, 729 (7th Cir. 2015). The agency's adverse credibility finding was supported by substantial evidence.

Moreover, even if the credibility finding were not supported by substantial evidence, we would still conclude, as did the Board, that Mr. Singh has not carried his burden of establishing eligibility for the relief he requests. For his asylum and withholding of removal claims, Mr. Singh must demonstrate at least a well-founded fear of persecution. *See W.G.A. v. Sessions*, 900 F.3d 957, 965 (7th Cir. 2018). If he can establish that he was subject to past persecution, it is presumed that he has a well-founded fear, and that there is a clear probability, of future persecution. *See Orellana-Arias*, 865 F.3d at 488 (citing 8 C.F.R. § 1208.16(b)(1)(i)) (asylum); 8 C.F.R. § 208.16(b) (withholding of removal). The Government can rebut this presumption by showing changed circumstances in the applicant's home country or by showing that the applicant can avoid the threat of persecution by relocating to another part of that country. 8 C.F.R. §§ 208.16(b)(1), 1208.16(b)(1).

The Board's determination that the harms Mr. Singh described did not constitute past persecution is supported by substantial evidence. For conduct to constitute persecution, it "must rise above mere harassment." *N.Y.C.C. v. Barr*, 930 F.3d 884, 888 (7th Cir. 2019) (quoting *Orellana-Arias*, 865 F.3d at 487). We have described the line between harassment and persecution as the line between "the nasty and the barbaric," between "misery and cruelty." *Sirbu v. Holder*, 718 F.3d 655, 659, 659 n.3 (7th Cir. 2013) (quoting *Stanojka v. Holder*, 645 F.3d

943, 948 (7th Cir. 2011)). Here, Mr. Singh alleges that men slapped, kicked, and hit him, and that he suffered cuts, bruises, and some broken teeth. The attacks were brief, isolated incidents, and there is no indication that he suffered further abuse or humiliation. We have previously upheld agency findings that no persecution occurred in cases involving injuries of a similar nature but no other indicia of persecution. *See Orellena-Arias*, 865 F.3d at 487 (applicant received unfulfilled death threats and was thrown to the ground and kicked on one occasion); *Hao Zhu v. Gonzales*, 465 F.3d 316, 319–20 (7th Cir. 2006) (applicant endured single, brief beating that left him needing seven stitches, was not detained, and was not subjected to additional abuse). On substantial evidence review, we cannot conclude that the evidence compels a finding of past persecution. *See INS v. Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Osorio-Morales v. Garland*, 72 F.4th 738, 741–42 (7th Cir. 2023); *Chuchman v. Garland*, 4 F.4th 483, 486 (7th Cir. 2021).

We note that Mr. Singh has waived all of his other theories of relief. He no longer contends that he can establish eligibility for asylum (or withholding of removal) based on a well-founded fear (or clear probability) of future persecution distinct from past persecution. And although he seeks to revive his CAT protection claim in this court, he waived that claim, too. In the BIA, Mr. Singh did not challenge the IJ's determination that his CAT claim failed because he had not described any threats of torture, and the BIA thus concluded that his CAT claim was waived. Although the BIA proceeded to conclude also that the IJ's rejection of his CAT claim was correct on the merits, in order to prevail in this court, Mr. Singh still must show that the Board somehow erred in determining that he waived his CAT claim. He has not done so, and we see no reason to disturb that determination.

**B.**

Mr. Singh also raises due process challenges to the proceedings before the IJ. He first claims ineffective assistance of counsel. In support of that claim, Mr. Singh alleges that his counsel before the IJ fabricated parts of his account in his asylum form and written statement and encouraged him to testify falsely at his hearing. He also claims that the IJ's assessment of his credibility violated his due process rights.

As the Government notes, Mr. Singh did not exhaust these claims before the BIA.[2] Failure to exhaust remedies before the BIA precludes our review. *See* 8 U.S.C. § 1252(d)(1). Such a failure might be excused where "the BIA itself would be powerless to address the problem, as might be the case with some fundamental constitutional claims." *Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006); *see Aparicio-Brito v. Lynch*, 824 F.3d 674, 684 (7th Cir. 2016). But where the petitioner is "making a due

---

[2] In a Rule 28(j) letter submitted after oral argument, Mr. Singh contended for the first time that his notice of appeal to the BIA, as well as an affidavit he attached to a request for an extension of time to file his BIA brief, sufficed to exhaust his ineffective-assistance claim. Those documents included references to alleged issues with his counsel before the IJ, but not to a due process or ineffective-assistance claim. The brief that Mr. Singh eventually filed in the BIA included neither references to those alleged issues nor to a due process or ineffective-assistance claim. Because "Rule 28(j) does not provide a second forum for raising new or different arguments," we need not consider Mr. Singh's contention. *Siddiqui v. Holder*, 670 F.3d 736, 749 n.6 (7th Cir. 2012). Even if we were to consider it, we would conclude that it lacks merit. A petitioner must at minimum set forth a "semblance of an argument" to exhaust it in the BIA. *Margos v. Gonzales*, 443 F.3d 593, 599 (7th Cir. 2006). The oblique allegations in Mr. Singh's notice of appeal and extension request were insufficient to satisfy this requirement.

process claim based on a procedural failing that the Board could have remedied, thereby obviating the constitutional claim, then the failure to exhaust will not be excused." *Ghaffar v. Mukasey*, 551 F.3d 651, 655 (7th Cir. 2008); *see Barragan-Ojeda v. Sessions*, 853 F.3d 374, 380 (7th Cir. 2017).

The Board had the authority to correct the procedural failings alleged in this case. Starting with Mr. Singh's ineffective-assistance claim, the Board regularly handles such claims. It has procedures for screening them, *see Matter of Lozada*, 19 I. & N. 637, 639 (BIA 1988), that we have approved, *Sembhi v. Sessions*, 897 F.3d 886, 892–93 (7th Cir. 2018); *Lin Xing Jiang v. Holder*, 639 F.3d 751, 755 (7th Cir. 2011), and with which Mr. Singh did not comply. As for the IJ's alleged failure to assess properly Mr. Singh's credibility, if the BIA agreed with Mr. Singh that the IJ's credibility assessment was defective, it could have remanded the case to the IJ for a new hearing. *See* 8 C.F.R. § 1003.1(d)(3).

## Conclusion

For the reasons stated, we deny Mr. Singh's petition for review.

                                                   PETITION DENIED