In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-3091

GURKIRAT SINGH,

*Petitioner*,

*v.*

PAMELA J. BONDI, Attorney General of the United States,

*Respondent*.

———————————

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A216-183-486

———————————

ARGUED APRIL 14, 2025 — DECIDED JUNE 23, 2025

———————————

Before BRENNAN, ST. EVE, and LEE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Gurkirat Singh, a citizen of India, fled his home in Punjab for the United States after being beaten and threatened for his political activities. Upon his arrival, Singh applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

The Immigration Judge ("IJ") denied Singh's requests for relief on multiple grounds, including because Singh could

reasonably relocate within India to avoid persecution. The
Board of Immigration Appeals (the "Board") affirmed. Be-
cause substantial evidence supports the IJ and Board's reloca-
tion determination, we deny Singh's petition for review.

## I. Background

Petitioner Gurkirat Singh is an Indian national and a mem-
ber of the Sikh ethnoreligious group. While residing in his
home state of Punjab, Singh joined a Sikh separatist party,
commonly known as the Mann Party. His political participa-
tion rapidly attracted the attention of members of the compet-
ing Congress Party, who approached Singh and told him that
it "would be good for him" to switch parties. Singh was un-
swayed.

A year later, Singh had a more serious run-in with the
Congress Party. While hanging up flyers for a Mann Party-
sponsored blood donation event, a small group of men con-
fronted Singh and beat him with baseball bats and hockey
sticks for ten to twelve minutes. The men reminded Singh that
they had told him to join the Congress Party. Singh attempted
to report the attack to the local police, but they refused to ac-
cept his report and advised him that he ought to join the Con-
gress Party.

Congress Party members beat Singh for a second time a
few months later. His attackers also threatened him, warning:
"we told you to quit you [sic] party and join our party, but
this time we will kill you, we will take your life." The beating
ended when Singh's cries drew the attention of nearby resi-
dents. Again, local police refused to investigate, instead in-
structing Singh to join the Congress Party.

Following this second attack, Singh left India for the United States, entering the country without authorization or inspection. Within a month of his arrival, the Government commenced removal proceedings against him. Singh conceded his inadmissibility but filed an application for asylum, withholding of removal, and protection under the CAT.

At an Immigration Court hearing, Singh testified to the above facts. The IJ found his testimony credible but denied his applications because he had not suffered persecution, would not face a "substantial risk" of torture if deported, and could relocate to safety within India. Expecting Singh to internally relocate was reasonable, the IJ elaborated, because "he is a twenty-five-year-old male in good health" and he "was able to relocate to the United States, a predominately English-speaking nation, and maintain a livelihood." Singh appealed and the Board affirmed the IJ's decision pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), explaining that it discerned no clear error in the IJ's relocation or past persecution findings.

## II. Discussion

Singh now petitions our court for review. He presses three principal arguments: (1) the Board improperly deferred to the IJ when deciding his appeal, (2) the IJ and Board erred by finding he could reasonably relocate to safety within India, and (3) the IJ and Board erred by finding that he had not suffered past persecution. We reach only Singh's first two contentions, as they resolve the petition.

### A. Scope of the Board's Review

We begin with Singh's charge that the Board examined the IJ's decision under an erroneous standard of review. Whether

the Board applied the correct standard of review is a legal question we consider de novo. *F.J.A.P. v. Garland*, 94 F.4th 620, 638 (7th Cir. 2024). Board precedent mandates that the Board apply a dual review standard for mixed questions of law and fact. *See Matter of R-A-F*, 27 I. & N. Dec. 778, 779–80 (A.G. 2020). So while the Board reviews an IJ's factual findings for clear error, its review of legal questions, "including the application of law to fact," is plenary. *Id.*; *see also* 8 C.F.R. § 1003.1(d)(3)(i)–(ii).

Singh objects that in his appeal, the Board improperly deferred to the IJ's resolution of the "legal" half of a mixed question: the reasonableness of his relocation. As evidence of deference, he points to the Board's statement that it discerned "no clear error" in the IJ's finding that he could reasonably relocate within India. Yet Singh's view of the record overlooks that the Board affirmed the IJ's judgment pursuant to *Matter of Burbano*, 20 I. & N. Dec. at 874. Under *Burbano*, the Board may affirm "in a summary fashion" when its independent review of the record yields conclusions that coincide with the IJ's decision. *Id.* The Board's invocation of *Burbano* thus demonstrates that the Board did not defer to the IJ. Instead, it exercised its "independent review authority" and concluded that Singh could reasonably relocate.[1] *Id*.

Seeing no procedural infirmity in the Board's decision, we now turn to the merits of the relocation finding.

---

[1] Singh waived any contention that the Board's *Burbano* statement was mere parroting of the correct standard of review or an insufficient indicium of independence, *see F.J.A.P.*, 94 F.4th at 638, by failing to file a reply brief. Accordingly, we do not reach that question here.

**B. Singh's Ability to Relocate within India**

To be eligible for asylum, withholding of removal, or protection under the CAT, an applicant must be unable to reasonably relocate to safety within his country of nationality. *Singh v. Garland*, 89 F.4th 602, 605 (7th Cir. 2024); *see also* 8 C.F.R. §§ 1208.13(b)(3), 1208.16(b)(1)(i)(A)–(B), (c)(3).

We review the IJ and Board's determination that Singh could reasonably relocate under the highly deferential substantial evidence standard. *Mateo-Mateo v. Garland*, 124 F.4th 470, 474 (7th Cir. 2024); *see also Cui v. Garland*, 71 F.4th 592, 599, 600 (7th Cir. 2023). We may not reverse "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Santashbekov v. Lynch*, 834 F.3d 836, 839 (7th Cir. 2016) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Singh conceded at oral argument that it is possible for low-level Mann Party members to avoid persecution by relocating within India, asserting only that personal circumstances make relocation unreasonable for him. On substantial evidence review, we cannot agree. Singh is a healthy, working-age male. He may have few occupational skills and speak only Punjabi, but he demonstrated resilience and adaptability when he successfully migrated to the United States. Endowed with these strengths, we do not think any reasonable adjudicator would be compelled to find that Singh's limited family ties outside Punjab make it unreasonable for him to relocate within India.

We therefore hold that substantial evidence supports the IJ and Board's conclusion that Singh could reasonably relocate. As a result, he is ineligible for asylum, withholding of removal, or protection under the CAT.

*        *        *

For these reasons, we must DENY the petition for review.